## IN RE ROBERT M.*
## (8219)

BORDEN, DALY and NORCOTT, Js.

Argued February 9—decision released May 4, 1990

*Valerie J. Quinn,* deputy assistant public defender, with whom, on the brief, was *Paul D. Eschuk,* assistant public defender, for the appellant (respondent).

*John H. Kearney,* state's advocate, for the appellee (petitioner).

BORDEN, J. The juvenile respondent appeals from the adjudication of delinquency, after he was found responsible for committing arson in the third degree in viola-

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 2026, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest and upon order of the Appellate Court.

tion of General Statutes § 53a-113. He claims that the trial court should have granted his motion to suppress all statements made by him to the police. We reverse the trial court's judgment.

The trial court could reasonably have found the following facts. On the evening of January 19, 1989, Officer Edward Golden of the New Milford police department arrived at the Lords Trailer Park in response to a call that a trailer was on fire. The fire started at approximately 7:15 p.m. Golden assisted the fire department until more help arrived. He thereafter engaged in crowd control, at which time he noticed the respondent holding a fire extinguisher and wearing various items of firemen's apparel. Because of the respondent's appearance, Golden asked him whether he was with the fire department. The respondent stated that he was not. He did state, however, that he knew many of the fire department personnel, and that he was enrolled in a program to join the department. The respondent also told Golden that he had been the first at the scene and that he had called in the fire. On the basis of this discussion, Golden considered the respondent to be a witness, and probably a suspect. The respondent, having told Golden that he was fifteen years old, was asked to give a statement at the New Milford police department with a parent accompanying him.

Later that evening, at approximately 8:45 p.m., the respondent and his father, M, arrived at the police station. Golden and Sergeant James Engle, in the presence of M, took a statement from the respondent. At 9:20 p.m., the statement was reduced to writing. The respondent, in the presence of M, was orally advised of his rights at this time.[1] Because of various incon-

---

[1] There is a discrepancy in the testimony of Golden and Engle in regard to the timing of the advisement of rights. Golden testified that the respon-

sistencies in the respondent's statement, the officers did not believe it to be true and, as a result, they never asked the respondent to sign it. At 10:20 p.m., a notice of rights form was signed by both the respondent and M, after Engle read them the rights on the form and asked whether they understood them.

While being questioned about the inconsistencies in his first statement, the respondent stated he would feel "more comfortable" talking to David Lathrop, the fire marshal for the town of New Milford, whom he knew. At approximately 10:45 p.m., Lathrop replaced Golden in the room, leaving the respondent in the presence of M, Engle and Lathrop. Because of M's presence, the respondent was reticent about making any statements regarding his involvement in setting the fire. He would start to make a statement, but would then withdraw. Although at this point in the interrogation the respondent did not explicitly state that he started the fire, he did make some statements implying guilt, including that his firemen friends would look down on him if they found out that he was responsible for the fire.

Subsequently, Engle suggested that M leave the room. Engle asked the respondent if he would prefer to talk without M's being present, and he asked M if he would be amenable to leaving the room for a short period of time. The respondent and M acceded to Engle's request. At some time between 11 and 11:30 p.m., M and Engle left the room. Shortly thereafter, Engle returned alone to join the respondent and Lathrop. Without M present, the respondent, at the prompting of Lathrop, orally confessed to starting the fire. At approximately midnight, immediately after this oral confession, M was called back into the room. In

---

dent was read his rights before providing his first statement, whereas Engle testified that the respondent was advised of his rights after giving his first statement.

the presence of M, the respondent repeated his statement. Shortly thereafter, also in the presence of M, the statement was reduced to writing on a form that had an advisement of rights printed on it. In addition to the written statement, Engle drew a diagram of the trailer that had been set afire, and the respondent indicated thereon where he had started the fire.[2] Engle did not reread the respondent's rights at this time, but told both the respondent and M that they were the same rights of which they previously had been advised. At 12:15 a.m., both M and the respondent read and signed this second written statement, attesting that it was an accurate representation of the immediately preceding oral statement.

The respondent moved to suppress all of his statements, both oral and written. The state did not offer into evidence the respondent's oral statement made in M's presence; it offered only the respondent's written statement. The court denied the motion as to the written statement and admitted it into evidence. The court noted that the respondent's oral statement made outside the presence of M would have been inadmissible had the state sought to enter it into evidence. The court found that because M was present at the time the written statement was given, the interrogation did not violate the parental presence requirement of General Statutes § 46b-137 (a), and it rejected the respondent's argument that the second statement was a product of the preceding, tainted statement.

On appeal, the respondent frames his claim regarding the court's failure to suppress his statement in two parts. First, he argues that the parental presence requirement of General Statutes § 46b-137 (a) renders inadmissible his oral confession, made outside of the

---

[2] We refer to both the written statement and the diagram that was received into evidence as the written statement.

presence of M, irrespective of the circumstances giving rise to M's absence. In his first argument, the respondent also contends that a parent's absence during any part of the interrogation process renders all statements made as part of that interrogation inadmissible. Second, the respondent argues that because the oral statement made outside of M's presence was inadmissible, the subsequent written statement was an inadmissible product of the illegally obtained confession, and that M's presence during the latter statement was insufficient to purge that taint.

The respondent's oral statement given outside of M's presence was clearly inadmissible for use in any later delinquency proceeding initiated against him. The language of General Statutes § 46b-137 (a)[3] is clear and unambiguous with respect to the admissibility of juvenile confessions. Under that statute, for a confession to be admissible in a delinquency proceeding, it must be made in the presence of a parent or guardian, after the parent or guardian and the child have been advised of the child's rights. See *In re Ralph M.*, 211 Conn. 289, 314, 559 A.2d 179 (1989).

It is true that the parental presence statute does not address whether parental presence is required during the entire interrogation process. The respondent argues that General Statutes § 46b-137 (a) should be strictly construed to mean that any parental absence, even during part of the interrogation process, impermissibly taints the entire proceeding. Any statement, therefore,

---

[3] General Statutes § 46b-137 (a) provides: "Any admission, confession or statement, written or oral, by a child shall be inadmissible in any proceeding for delinquency against the child making such admission, confession or statement unless made by such child in the presence of his parent or parents or guardian and after the parent or parents or guardian and child have been advised (1) of the child's right to retain counsel, or if unable to afford counsel, to have counsel appointed on the child's behalf, (2) of the child's right to refuse to make any statements and (3) that any statements he makes may be introduced into evidence against him."

given by the juvenile would be inadmissible even if made in the presence of the parent. He supports this interpretation of § 46b-137 (a) based on the judicial gloss of the Colorado and Oklahoma parental presence statutes. Colo. Rev. Stat. § 19-2-102 (1987); Okla. Stat. tit. 10, § 1109A (1989); see B. Feld, Criminalizing Juvenile Justice: Rules of Procedure for the Juvenile Court, 69 Minn. L. Rev. 141, 180 n.132 (1985). In these two states, confessions made in the absence of a parent are per se inadmissible, and the circumstances surrounding that parent's absence are of no import. See *People v. Maes,* 194 Colo. 235, 237, 571 P.2d 305 (1977) (presence of a social services caseworker who had no special interest in defendant insufficient to satisfy parental presence requirement); *People in Interest of L. B.,* 33 Colo. App. 1, 4, 513 P.2d 1069 (1973) (incarcerated parent's presence does not satisfy statutory presence requirement because his ability to guide and advise is restrained by his own circumstances); *State v. M.A.L.,* 765 P.2d 787, 790 (Okla. Crim. App. 1988) (confession made in assistant principal's office, outside presence of parent, is inadmissible).

While we agree that the language of Connecticut's statute mandates a strict construction with respect to confessions obtained outside of a parent's presence, these cases are distinguishable. In this case, it is the written statement that is at issue, not the prior oral confession made in M's absence. Further, although those states have drawn a bright line rule with respect to the admissibility of statements made outside of a parent's presence, a rule we find applicable to § 46b-137 (a), neither state has extended that rule to statements made during the course of the interrogation in the presence of a parent. See *People in Interest of M.R.J.,* 633 P.2d 474 (Colo. 1981) (a totality of circumstances approach should be used in evaluating whether a statement made in the presence of a defend-

ant's parents was voluntary in situations where the first confession was obtained outside of parent's presence); see also *A.M.H.* v. *State,* 766 P.2d 351 (Okla. Crim. App. 1988) (minor's confession in presence of a parent immediately after he was alone with an investigatory agent for a five minute "visit" was not a violation of Oklahoma's parental presence statute absent a showing that the minor was questioned during this period).

Both parties have devoted substantial portions of their briefs to the issue of the proper construction of General Statutes § 46b-137 (a). The parties have asked us to consider whether the statute should be strictly construed or construed under the totality of circumstances in determining the extent to which noncompliance with § 46b-137 (a) impinges on the admissibility of other statements made during the interrogation process that facially satisfy the parental presence requirement. This issue, however, need not be addressed in order to resolve this case. After reviewing the record, we conclude that it can be decided on a narrower issue, namely, whether the respondent's subsequent written statement was a product of the prior illegal questioning and, therefore, inadmissible under the "fruit of the poisonous tree" doctrine. See *Wong Sun* v. *United States,* 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1968); *Washington* v. *State,* 182 Conn. 419, 421 n.1, 438 A.2d 1144 (1980).[4]

---

[4] The state cites *Washington* v. *State,* 171 Conn. 683, 690, 372 A.2d 106 (1976), for the proposition that the absence of M was a mere technical lapse in the statutory requirements. We disagree. In *Washington,* our Supreme Court held that noncompliance with Practice Book § 1108 (3), which requires a juvenile to be informed of his rights when admitted to a juvenile detention facility, was to be treated as one element in determining whether, under the totality of the circumstances, the accused waived his rights voluntarily and the statements were a product of his free will. In *Washington,* no incriminating statements were made while the juvenile was in the detention center. Id. In this case, unlike *Washington,* a facially valid confession was obtained by the police following a confession that was inadmissible under General Statutes § 46b-137 (a). The confession entered into evidence in the

Under this analysis, we consider the respondent's oral confession to be inadmissible under General Statutes § 46b-137 (a) because it was made outside of the presence of a parent. There can be no doubt on this record that the respondent's oral confession was obtained in violation of General Statutes § 46b-137 (a) because it was made in his parent's absence. Further, although this issue has not been addressed in Connecticut jurisprudence, we hold that, as a preliminary matter, the "fruit of the poisonous tree" doctrine applies to statements obtained from a juvenile in violation of General Statutes § 46b-137 (a). See *People* v. *Saiz,* 620 P.2d 15, 19–20 (Colo. 1980) (because the parental presence statute was enacted to safeguard the privilege against self-incrimination, the same privilege protected by *Miranda,*[5] the "fruit of the poisonous" tree doctrine applies to violations of that statute as well).

The attenuation exception to the exclusionary rule is well settled. " 'Not every confession that follows an invalid admission of criminal involvement is a tainted product of the earlier statement.' " *State* v. *Schroff,* 206 Conn. 182, 197, 536 A.2d 952 (1988). " '[I]n assessing the causal connection between an involuntary statement and a subsequent confession, courts have considered the temporal proximity of the illegality and the confession, the presence of intervening circumstances, and the flagrancy of the official misconduct.' See *Brown* v. *Illinois,* 422 U.S. 590, 603–604, 95 S. Ct.

present case immediately followed on the heels of a confession obtained during an active interrogation by the police that lasted at least thirty minutes during which time the juvenile was without the assistance of a parent. A detailed analysis of these circumstances is not required to conclude that there was more here than a mere technical lapse of the statutory requirements. Compare *A.M.H.* v. *State,* 766 P.2d 351 (Okla. Crim. App. 1988) (a five minute absence of parent during which there was no questioning did not taint subsequent confession).

[5] *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

2254, 45 L. Ed. 2d 416 (1975); *State* v. *Ostroski,* 201 Conn. 534, 547, 518 A.2d 915 (1986)." *State* v. *Schroff,* supra, 197–98, quoting *State* v. *Shifflett,* 199 Conn. 718, 741, 508 A.2d 748 (1986).

In this case, the respondent's inculpatory oral and written statements made in M's presence followed by a matter of minutes the statutorily inadmissible oral statement made in M's absence. The interview during which the written statement was obtained was in substance no more than a continuation of the prior questioning, pausing only to ensure M's presence for what the police expected to be a repetition of the prior incriminating statement. See *People* v. *Saiz,* supra, 20.

The state seeks to demonstrate attenuation based on the facts that M knew his son was alone and did not object when they were separated, that after M reentered the room he and the respondent were again advised of the respondent's rights, and that M was present both when the respondent repeated his statement and when the statement was reduced to writing, acknowledged and signed. These factors are insufficient to establish attenuation between the two confessions. The statement in this case was clearly the product of the earlier confession that was solicited by the police in violation of § 46b-137 (a). The purported intervening factors advanced by the state were inconsequential in dissipating the taint of the illegal questioning.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.