# IN RE KEVIN K.*
## (AC 28577)

DiPentima, Lavine and Lavery, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued January 2—officially released July 22, 2008

*Jon D. Golas*, for the appellant (respondent).

*Raheem L. Mullins*, deputy assistant state's attorney, with whom, on the brief, were *Matthew C. Gedansky*, state's attorney, and *Joseph J. Kristan, Jr.*, juvenile prosecutor, for the appellee (petitioner).

*Opinion*

DiPENTIMA, J. The respondent, a minor child, appeals from the trial court's judgment adjudicating

him a delinquent for having committed the crimes of reckless burning in violation of General Statutes § 53a-114[1] and making a false statement in the second degree in violation of General Statutes § 53a-157b.[2] On appeal, the respondent claims that the court improperly (1) denied his motion to suppress one of his written statements and improperly admitted it into evidence at trial in violation of General Statutes § 46b-137 (a), (2) denied his motion to suppress one of his written statements and improperly admitted it into evidence at trial because the statement was obtained in violation of his rights pursuant to *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), and (3) applied the law of the case doctrine to the ruling on the motion to suppress. We agree with the respondent's first claim.[3] Accordingly, we reverse the judgment of the trial court and remand the case for a new trial.

The following facts are relevant to the respondent's claims on appeal. During the course of investigating an incident that occurred outside a Family Dollar store in Rockville on October 9, 2005, Officer Charles Hicking of the Vernon police department interviewed the respondent at his home. Prior to commencing the interview on October 9, Hicking fully advised the respondent

---

[1] General Statutes § 53a-114 (a) provides in relevant part: "A person is guilty of reckless burning when he intentionally starts a fire or causes an explosion, whether on his own property or another's, and thereby recklessly places a building, as defined in section 53a-100, of another in danger of destruction or damage."

[2] General Statutes § 53a-157b (a) provides in relevant part: "A person is guilty of false statement in the second degree when he intentionally makes a false written statement under oath or pursuant to a form bearing notice, authorized by law, to the effect that false statements made therein are punishable, which he does not believe to be true and which statement is intended to mislead a public servant in the performance of his official function."

[3] Because we do not believe that either of the respondent's other two claims will arise on retrial, we do not reach those issues. See *State* v. *Huckabee*, 41 Conn. App. 565, 575, 677 A.2d 452, cert. denied, 239 Conn. 903, 682 A.2d 1009 (1996).

and his mother of the respondent's constitutional rights pursuant to § 46b-137 (a). Hicking had the respondent execute a juvenile waiver form and had his mother execute a parental consent form, both acknowledging that they had been advised of the respondent's rights. The respondent then made a written statement in which he described his actions regarding the incident but denied lighting anything on fire.

Hicking next interviewed A, another minor child who was involved in the incident. A provided Hicking with information that implicated the respondent in the incident. As a result of this information, Hicking returned to the respondent's home on October 11, 2005, to interview him again regarding the contradictions between his statement and the statement given by A. Hicking conducted the second interview of the respondent in the presence of his mother. The respondent gave a second statement that conflicted with his earlier statement and inculpated him in the incident. Both the respondent and his mother signed the second statement. At this October 11 interview, Hicking did not advise the respondent or his mother of the respondent's rights, nor did Hicking have them execute parental consent and juvenile waiver forms.

On the basis of the information in the second statement, Hicking issued the respondent a juvenile summons. Prior to trial, the respondent moved to suppress the October 11, 2005 statement. The motion was denied. After a trial to the court, the respondent was adjudicated delinquent on the charges of reckless burning and false statement in the second degree and was sentenced to six months of probation.[4] This appeal followed.

[4] Although the respondent's probationary period may have expired, this appeal is not moot. See In re Jeremy M., 100 Conn. App. 436, 443–44, 918 A.2d 944, cert. denied, 282 Conn. 927, 926 A.2d 666 (2007).

"As an initial matter, we note that [o]ur standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [When] the legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set out in the court's memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Brown*, 279 Conn. 493, 514, 903 A.2d 169 (2006).

The respondent claims that the court improperly denied his motion to suppress his second statement, given on October 11, 2005, because the statement was inadmissible pursuant to § 46b-137 (a). Specifically, the respondent claims that the statute required Hicking to advise his mother and him of his rights again before he gave his second statement. Under the facts of this case, we agree.

To resolve the respondent's claim, we must interpret the language of the statute. Matters of statutory interpretation are matters of law and, thus, require plenary review. *In re Terrance C.*, 58 Conn. App. 389, 396, 755 A.2d 232 (2000). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of

the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Windels* v. *Environmental Protection Commission*, 284 Conn. 268, 294–95, 933 A.2d 256 (2007).

The statute at issue, § 46b-137 (a), provides: "Any admission, confession or statement, written or oral, made by a child to a police officer or Juvenile Court official shall be inadmissible in any proceeding concerning the alleged delinquency of the child making such admission, confession or statement unless made by such child in the presence of his parent or parents or guardian and *after* the parent or parents or guardian and child have been advised (1) of the child's right to retain counsel, or if unable to afford counsel, to have counsel appointed on the child's behalf, (2) of the child's right to refuse to make any statements and (3) that any statements he makes may be introduced into evidence against him." (Emphasis added.)

Both parties argue that the meaning of the statute is clear and unambiguous and, yet, they offer different interpretations of what the statute means with regard to the timing of the advisement of the child's rights and the meaning of the word "after" in this context.[5] The respondent argues that in order for his October 11, 2005 statement to be admissible, the statute required Hicking to have advised the respondent and his parent of his rights on October 11 before he gave the second statement. The petitioner, the commissioner of children and

[5] Both parties agree that the statement was made in the presence of the respondent's parent.

families, argues that the October 11 statement is admissible because Hicking complied with the statute by advising the respondent and his parent of his rights on October 9. Although in other contexts this court has stated that the text of the statute is clear and unambiguous; see *In re Robert M.*, 22 Conn. App. 53, 57, 576 A.2d 549 (1990); the meaning of the word "after" in this context is not clear.

To resolve the difference in interpretation of meaning, we employ our rules of statutory construction and begin with the text of the statute. Neither our Supreme Court nor this court has had previous occasion to interpret the meaning of "after" in this context.[6] We note parenthetically that our Supreme Court has acknowledged, in a different situation, the difficulty with this word: "The word 'after' . . . like 'from,' 'succeeding,' 'subsequent,' and similar words, where it is not expressly declared to be exclusive or inclusive, is susceptible of different significations, and is used in different senses, and with an exclusive or inclusive meaning, according to the subject to which it is applied; and, as it would deprive it of some of its proper significations to affix one invariable meaning to it, in all cases, it would, of course, in many of them, pervert it from

---

[6] The language of this statute has been parsed on a few other occasions but not with regard to the timing of the advisement of rights. In examining the text of the statute in those other cases, our Supreme Court declined, for example, to read into the statute protections that are not present based on the plain text. See, e.g., *State* v. *Ledbetter*, 263 Conn. 1, 16, 818 A.2d 1 (2003) (rejecting interpretation of statute that would disregard words in statute in order to afford protection to children in circumstances beyond juvenile proceedings); *In re Ralph M.*, 211 Conn. 289, 314, 559 A.2d 179 (1989) (holding that respondent not entitled at transfer hearing to suppression of statements allegedly obtained in violation of statute because it was not juvenile proceeding, which is type of proceeding specifically covered by statute). In contrast to those cases, here, we are not being asked to ignore words in the statute or to extend the scope beyond plainly stated restrictions but, rather, to determine the intent of the legislature with regard to words it did use.

the sense of the writer or speaker. Its true meaning, therefore, in any particular case, must be collected from its context and subject matter, which are only means by which the intention is ascertained . . . ." *Sands* v. *Lyon*, 18 Conn. 18, 27 (1846). Because the word "after" has different significations, we conclude that the statute, with regard to this issue, is unclear and ambiguous. "The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem*, 269 Conn. 120, 134 n.19, 848 A.2d 451 (2004). Here, "after" could mean, as the respondent argues, that the officer was required to advise the respondent of his rights on October 11, 2005, when the officer returned, before the respondent gave the second statement. It also could mean, as the petitioner argues, that any statement after the initial advisement of rights on October 9, 2005, is admissible. Both of these interpretations fall somewhere along the continuum of interpreting the language to mean, on the one hand, that the advisement must be given immediately preceding each statement and, on the other hand, that the advisement need only be given once at the beginning of an investigation regardless of the time span of the investigation. Thus, the meaning of "after" here is not clear and unambiguous because the text of the statute permits more than one reasonable interpretation.

Having concluded that the text is not clear and unambiguous, we now must turn "to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter" for interpretive guidance. *Windels* v. *Environmental Protection Commission*, supra, 284 Conn. 294–95. Section 46b-137 (a) was enacted in 1967, as General Statutes § 17-66d, to respond to the United States Supreme Court

decision, *In re Gault*, 387 U.S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967), which "specifically dealt with the application of certain constitutional rights at delinquency proceedings where an adjudication of delinquency or guilt might result." *In re Ralph M.*, 211 Conn. 289, 315, 559 A.2d 179 (1989). In outlining the provisions of the legislation, Representative A. Lucille Matarese explained to the House of Representatives that in *In re Gault*, the Supreme Court held that due process under the constitution applied to Juvenile Court proceedings and that in these proceedings, "the [c]onstitutional privilege against self-incrimination, as contained in the [f]ifth [a]mendment, appl[ies] and so the child and parents shall be advised of the child['s] right to remain silent and that anything that he says may be used against him." 12 H.R. Proc., Pt. 11, 1967 Sess., p. 5055.

In *In re Gault*, the United States Supreme Court stated: "We conclude that the constitutional privilege against self-incrimination is applicable in the case of juveniles as it is with respect to adults. We appreciate that special problems may arise with respect to waiver of the privilege by or on behalf of children, and that there may well be some differences in technique—but not in principle—depending upon the age of the child and the presence and competence of parents. The participation of counsel will, of course, assist the police, [j]uvenile [c]ourts and appellate tribunals in administering the privilege. If counsel was not present for some permissible reason when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary, in the sense *not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair*." (Emphasis added.) *In re Gault*, supra, 387 U.S. 55.

Despite amendments to the statute since its enactment, the basic intent to give effect to *In re Gault* has not been altered. The original act applied to all admissions, confessions and statements made in Juvenile Court and, thus, was not limited to those made by children. Public Acts 1967, No. 630, § 10.[7] The first time the statute was amended, in 1969, it was to enumerate specifically the rights involved instead of referring to them by cross reference, to remove reference to persons having control of the child other than parents or guardians, and to add a subsection concerning the admissibility of confessions, admissions and statements made by parents or guardians of the child relating to neglect, uncared for or dependent petitions. Public Acts 1969, No. 794, §§ 13, 14. In discussing the differences between subsection (a) and the new subsection (b), Representative James T. Healey stated on the floor of the House of Representatives that subsection (a) "spells out that a confession is inadmissible in delinquency proceedings unless it is clearly established that the confession has been obtained after a warning as to the rights." 13 H.R. Proc., Pt. 11, 1969 Sess., p. 4984.

The General Assembly amended the statute again in No. 75-183 of the 1975 Public Acts. The petitioner refers to a portion of the changes made through this amendment as evidence of legislative intent that supports her interpretation of the meaning of "after" with regard to the timing of the advisement of rights. The petitioner contends that the statute no longer contains a requirement for a *contemporaneous advisement of rights* because the legislature removed the words "at the time

---

[7] Public Acts 1967, No. 630, § 10, provides: "Any admission, confession or statement, written or oral, shall be inadmissible in any proceeding in the juvenile court against the person making such admission, confession or statement unless such person, and the parent or parents, guardian or other person having control of such person if he is a child as defined in section 1 of this act, shall have been advised of their rights as provided by section 7 of this act at the time of making such admission, confession or statement."

of making such admission, confession or statement"
and replaced them with the word "after."[8] According
to the petitioner, this change evinces the legislature's
intent to expand the time frame within which an officer
may take a statement after advising the child and parent
of the child's rights. This argument ignores the overall
changes to the statute's organization and grammatical
structure made by the amendment. The legislature did
not simply remove "at the time of" and replace it with
"after." Furthermore, the phrase "at the time of" could
not have been read in isolation in the previous version
of the subsection. The phrase "at the time of" was part
of a sentence that stated that any admission, confession
or statement was inadmissible in any proceeding for
the delinquency in the juvenile court against the person
making such admission, confession or statement
"unless such person, and the parent or parents or guard-
ian of such person if he is a child as defined in section
17-53 *shall have been advised* of their rights . . . *at
the time of making such admission, confession or
statement.*" The coupling of "shall have been advised"
with "at the time of" is grammatically the equivalent of

[8] No. 75-183 of the 1975 Public Acts provides in part: "(a) Any admission,
confession or statement, written or oral, BY A CHILD shall be inadmissible
in any proceeding for delinquency in the juvenile court against the [person]
CHILD making such admission, confession or statement unless [such person,
and the parent or parents or guardian of such person if he is a child as
defined in section 17-53 shall have been advised of their rights to retain
counsel and that if they are unable to afford counsel, to have counsel
appointed to represent them, that they have a right to refuse to make any
statements and that any statements they make may be introduced in evidence
against them, at the time of making such admission, confession or statement]
MADE BY SUCH CHILD IN THE PRESENCE OF HIS PARENT OR PARENTS
OR GUARDIAN AND AFTER THE PARENT OR PARENTS OR GUARDIAN
AND CHILD HAVE BEEN ADVISED (1) OF THE CHILD'S RIGHT TO
RETAIN COUNSEL, OR IF UNABLE TO AFFORD COUNSEL, TO HAVE
COUNSEL APPOINTED ON THE CHILD'S BEHALF, (2) OF THE CHILD'S
RIGHT TO REFUSE TO MAKE ANY STATEMENTS AND (3) THAT ANY
STATEMENTS HE MAKES MAY BE INTRODUCED INTO EVIDENCE
AGAINST HIM." We note that the additions to the statute made by the act
are in capital letters and the deletions are in brackets.

"after the parent or parents or guardian and child have been advised." Both of these phrases mean that the child and his parent or guardian must be advised of the child's rights before the child makes the statement. More importantly, the changes contained in Public Act 75-183 made the protections afforded by subsection (a) applicable only to admissions, confessions and statements made by the child and not to those made by their parents or guardians, as in the previous version. Thus, we disagree with the petitioner that the elimination of the phrase "at the time of" signified a change in the meaning of the statute with regard to the timing of the advisement of rights because, when it is viewed as part of the overhaul of the subsection, it is clear that the intent was to effect a much more significant change in who was afforded the protections of the subsection.

On the basis of this legislative history, this court concluded on another occasion that "[t]he warnings required by § 46b-137 (a) are equivalent to the *Miranda* warnings. . . . The purpose of the *Miranda* warnings is to enhance an accused's ability to exercise fifth amendment rights knowingly, intelligently and voluntarily. . . . Thus, the purpose of the § 46b-137 (a) warnings is to help an accused make a valid decision to speak or remain silent." (Citations omitted.) *In re Enrique S.*, 32 Conn. App. 431, 436, 629 A.2d 476 (1993). Moreover, although the statutory warnings themselves are equivalent to the *Miranda* warnings, the legislature, in responding to *In re Gault*, through the enactment of § 46b-137, clearly intended to go beyond the protections afforded under *Miranda*. First, and most obviously, the statute requires that the statement be made in the presence of the child's parent or guardian. Second, the statute does not require that the child be in custody. It is apparent that the legislature determined that these additional safeguards were necessary in the juvenile context in order to address the United States Supreme

Court's concern that, with a child, it is not just coercion, suggestion and ignorance that could lead to an involuntary admission, but also "adolescent fantasy, fright or despair." *In re Gault*, supra, 387 U.S. 55.

Furthermore, our Supreme Court, in *State* v. *Ledbetter*, 263 Conn. 1, 12–17, 818 A.2d 1 (2003), distinguished between the protections afforded by the statute and the protections under *Miranda*, stating that the statute applies only in cases concerning the alleged delinquency of a child but not in situations when a child is prosecuted as an adult. The court emphasized that this "legislative determination not to extend the protections of § 46b-137 (a) to a child who, after being subjected to custodial interrogation, is prosecuted as an adult, does not leave such a child without adequate recourse to challenge the state's use of his or her confession. No such confession is admissible unless the police properly advise the child of his or her *Miranda* rights, and, as in any case involving custodial questioning, the [petitioner] has the burden of proving that the child understood those rights and waived them voluntarily, knowingly and intelligently." Id., 17. As the analysis in *Ledbetter* demonstrates, the court determined that though the warnings may be the equivalent, the protections afforded by the statute and by *Miranda* are distinct.

Returning to the issue in this case, we now view the language of the statute through the prism of its legislative history and intent of the legislature. Having determined that the purpose of the statute is to help the child and his parent or guardian decide whether to make a voluntary admission or to remain silent, we conclude that the advisement of rights must be given in a manner that furthers the purpose of the statute. This conclusion is in keeping with the case law concerning this statute in which our courts have held that the requirements of the statute are not merely perfunctory.

For instance, the statute also requires that a parent or guardian be present when the statement is made. This court has explored the extent of this requirement in its case law, and those cases inform our understanding of the advisement requirement. In *In re Robert M.*, this court held that an oral confession made in the absence of a child's parent was clearly inadmissible, and, therefore, under the "fruit of the poisonous tree" doctrine, a subsequent written statement also was inadmissible. *In re Robert M.*, supra, 22 Conn. App. 59–61. In that case, the police took an inculpatory oral statement from the respondent after his father had agreed to leave the interrogation room, though the father remained nearby, while the police continued to interrogate his child. Id., 55. Thereafter, the father returned to the interrogation room, and the child repeated his inculpatory statement and then reduced it to writing. Id., 55–56. "[W]e consider[ed] the [child's] oral confession to be inadmissible under General Statutes § 46b-137 (a) because it was made outside the presence of a parent." *In re Robert M.*, supra, 60.

In contrast, in another case, this court held that the requirement of a parent's presence was not so superficial that the parent's being out of sight of the child necessarily defeats the admission of the confession. In *In re Jonathan M.*, this court held that the presence requirement of § 46b-137 (a) was satisfied if the parent's presence achieved the purpose for which it is required. *In re Jonathan M.*, 46 Conn. App. 545, 551–52, 700 A.2d 1370, cert. denied, 243 Conn. 930, 701 A.2d 661 (1997). In that case, the child's mother was also outside the interrogation room when the child made the inculpatory statements.[9] Id., 551. We concluded, however, that

[9] The child's "mother left the interview room when it became clear to her that [the child] had taken part in the murder of her mother because she could no longer bear to look across the table at him. When she left the room, the police ceased questioning the [child]. The [child's] mother was immediately told that the interview with her son could not continue in her absence. In order that the interview could continue, a detective situated a

because the trial court found that "it is clear that the mother, from her vantage point in the hall, was in a position to monitor the tone of voice and the manner in which the questions were being asked and the manner in which [her son] was responding to them" and that the child was "aware of his mother's presence [and] could have requested her advice or intervention at any time," the mother was present, as required by § 46b-137, when the inculpatory statements were made. Id., 551–52.

As these cases demonstrate, determining whether the requirement that the parent or guardian be present has been fulfilled depends on the totality of the circumstances, and in order to make that determination, the court must look to whether, under the facts of the case, the purpose of the statute was achieved. Similarly, the advisement of the child's rights is not simply a pro forma requirement of the statute but an integral component also designed to ensure that the child and the parent or guardian have made a valid decision to make a voluntary admission. Thus, to determine whether this requirement was satisfied, we conclude that a facts and circumstances analysis should be used.[10]

chair in the hallway just outside the open door to the interview room, approximately six to eight feet from her son. From this vantage point, the respondent's mother could hear and be heard, although she could not see her son without standing in the doorway. The record supports the trial court's finding that the respondent was aware of her presence and that a portion of the interview in which inculpatory statements were made was conducted while the mother was seated in the hall." *In re Jonathan M.*, supra, 46 Conn. App. 551.

[10] We note that the United States Supreme Court has held, in the *Miranda* context, that the "totality-of-the-circumstances approach is adequate to determine whether there has been a waiver even where interrogation of juveniles is involved. . . . This includes evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights. *Fare* v. *Michael C.*, [442 U.S. 707, 725, 99 S. Ct. 2560, 61 L. Ed. 2d 197 (1979)]." (Internal quotation marks omitted.) *State* v. *Perez*, 218 Conn. 714, 725, 591 A.2d 119 (1991).

In the present case, in holding that the statement was admissible, the court looked at the facts of this case to determine whether the advisement of rights requirement was satisfied with regard to the statement given on October 11, 2005. The court employed this analysis to determine whether the advisement of rights given on October 9 had expired by the time Hicking took the October 11 statement. The court stated that it was not aware of any time limit on an advisement of rights and that no evidence was presented that either the respondent or his mother was restricted in his or her ability to understand what was happening or suffered from a condition that would prevent him or her from remembering the advisement of rights given on October 9. Although we agree that the court should conduct a totality of the circumstances analysis, we disagree with the legal premise of the inquiry and, accordingly, its ultimate conclusion.

The petitioner has the burden of establishing the admissibility of the October 11 statement. See *State* v. *Ledbetter*, supra, 263 Conn. 17. Admissibility of a statement pursuant to the statute requires that the statement be taken after the child and his parent have been advised of the child's rights. As we have concluded, to determine whether the statement was taken after the advisement of rights, the court must determine whether the advisement of rights was given in a manner to help the respondent and his parent make a valid decision about whether to remain silent or to make a voluntary admission. Thus, the question, when evaluating the facts of this case, is not whether the advisement of rights on October 9, 2005, expired but, rather, whether the purpose of the statute was achieved.

Here, Hicking questioned the respondent on October 9, 2005, and took a statement from the respondent after he had advised the respondent and his parent of his rights. Two days later, Hicking returned to question the

respondent again because he had received a different account of the event at issue from another minor child, and that minor's statement had inculpated the respondent. Hicking returned precisely because he thought that the respondent's October 9 statement was false, but Hicking did not advise the respondent and his parent of his rights, in particular his right to remain silent. In addition to arguing that there was no evidence that the respondent and his parent had forgotten the advisement of rights, the petitioner argues that the fact that the respondent and his parent left the room at one point on October 11 before the respondent gave his statement is evidence that the respondent and his parent were aware of his right to remain silent, and, thus, it was not necessary for Hicking to advise them of his rights on October 11. Again, the question is not whether there is evidence demonstrating that the respondent and his parent forgot what the respondent's rights were but, rather, whether the petitioner proved that the respondent and his parent were properly assisted in their decision regarding whether the respondent should speak or remain silent.

We do not know what the respondent and his parent discussed when they left the room prior to the respondent's giving his second statement because there is no evidence of that conversation. It would be only speculation and would be improper to assume that they were discussing whether he should remain silent. Without the advisement of rights and with a police officer confronting the child with a contradictory and inculpatory statement of another, a child and his parent might perceive the child's options, in fact, to be either to reiterate his initial statement or to change his statement; they might not contemplate the option of remaining silent because of a perceived need to respond to the contradictory statement. In precisely this type of situation, in which the respondent was being asked to respond to

a contradictory, inculpatory statement, Hicking should have advised the respondent and his parent of his rights during his discussion with them on October 11, 2005, before taking the second statement for the purpose of § 46b-137 to be achieved.

We hold that the court's conclusion that the inquiry regarding the admissibility of the statement centered on the expiration of the advisement of rights was incorrect legally and logically; the inquiry should have focused on whether the advisement had assisted the respondent and his parent with the decision of whether to remain silent or to make a statement on October 11, 2005. Furthermore, we do not find support in the facts set out in the court's memorandum of decision for the conclusion that the statement was admissible because we cannot conclude under the totality of these circumstances that the respondent and his parent made a valid decision to make a voluntary admission that was not the product of coercion, suggestion, ignorance of rights or adolescent fantasy, fright or despair. Accordingly, the statement was inadmissible under § 46b-137, and the motion to suppress should have been granted.

The judgment is reversed and the case is remanded for a new trial.

In this opinion LAVERY, J., concurred.

LAVINE, J., dissenting. The central issue in this appeal is whether certain of the constitutional rights of the respondent, a minor child, were protected as required by General Statutes § 46b-137 (a), which provides that both a juvenile and his or her parent or guardian must be advised of those rights and the implications of waiving them in order for the juvenile's statement to the police to be admissible in a court of law. See *In re Enrique S.*, 32 Conn. App. 431, 436, 629 A.2d 476 (1993). I conclude that the purpose of the statute

was met when the respondent and his mother were advised and signed waiver or consent forms *prior* to the respondent's giving a statement to the investigating police officer on October 11, 2005. I, therefore, respectfully dissent.

I note the following facts and procedural history, in addition to those included in the majority's opinion. After the respondent gave a statement to the investigating police officer, Charles Hicking, on October 11, 2005, the then thirteen year old respondent was arrested and charged with several crimes.[1]

Prior to trial, on August 1, 2006, the respondent filed a motion to suppress the statement he gave to Hicking on October 11, 2005. In his motion to suppress, the respondent claimed that the statement was obtained in violation of § 46b-137 (a) and the rights afforded by the state and federal constitutions. Specifically, the respondent claimed that (1) he did not knowingly or voluntarily waive his right to remain silent, (2) his mother was not present when he made the statement to the police, (3) he and his mother were not advised of his constitutional rights *prior* to his giving a statement to the police, (4) his statement was the result of coercion by the police and (5) his mother never executed a parental consent form.

The court, *Fuger*, *J.*, held a hearing on September 28, 2006, and thereafter denied the respondent's motion to suppress. At trial before the court, *Graziani*, *J.*, the respondent objected to the introduction of his October 11, 2005 statement. Judge Graziani overruled the objection, stating that Judge Fuger's ruling was the law of

---

[1] The respondent was charged with reckless burning in violation of General Statutes § 53a-114, breach of the peace in the second degree in violation of General Statutes § 53a-181, making a false statement in the second degree in violation of General Statutes § 53a-157b, reckless endangerment in the second degree in violation of General Statutes § 53a-64 and risk of injury to a child in violation of General Statutes § 53-21 (a) (1).

the case, and admitted the October 11, 2005 statement into evidence. At the conclusion of trial, at which the respondent presented no evidence, Judge Graziani found the respondent guilty of reckless burning in violation of General Statutes § 53a-114 and making a false statement in the second degree in violation of General Statutes § 53a-157b.[2] The court adjudicated the respondent delinquent and sentenced him to six months of probation. The respondent appealed. Additional facts will be stated as needed.

I

The respondent claims on appeal that (1) his motion to suppress was improperly denied and (2) his October 11, 2005 statement improperly was admitted into evidence at trial. I disagree.

A

The respondent claims that Judge Fuger improperly denied his motion to suppress his October 11, 2005 statement pursuant to the plain language of § 46b-137 (a). A familiar standard of review is applied "to a trial court's findings and conclusions in connection with a motion to suppress. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . The conclusions drawn by the trial court will be upheld unless they are legally and logically inconsistent with the evidence. . . . [W]e engage in a careful examination of the record to ensure that the court's decision was supported by substantial evidence. . . . We give great deference to the findings of the trial court because it weighs the evidence before it and assesses the credibility of witnesses." (Internal quotation marks omitted.) *State* v. *Linarte*, 107 Conn. App. 93, 98, 944 A.2d 369 (2008).

---

[2] The court found the respondent not guilty of the remaining charges.

The following additional facts are germane to my analysis. During the hearing on the motion to suppress, the petitioner placed into evidence the waiver form signed by the respondent, the consent form his mother signed and his October 9, 2005 statement. The petitioner also presented the testimony of Hicking and Kristan DiMauro, a Vernon police officer, who, on October 11, 2005, accompanied Hicking for field training purposes. DiMauro did not participate in the investigation but observed Hicking's interaction with the respondent and his mother. The respondent presented no evidence at the hearing and offered no case law in support of the claims raised in his motion to suppress. His counsel relied solely on the *plain language* of § 46b-137 (a) to suppress the statement of October 11, 2005.

The court denied the motion to suppress, finding that the respondent was not in custody at the time he gave the October 11, 2005 statement, and concluded that there was no constitutional requirement that he be advised of his right to remain silent. The court also found that the interview process was not deceptive, that it was straightforward and that Hicking did not violate the respondent's constitutional rights. The court addressed the respondent's claims pursuant to § 46b-137 (a), finding that the respondent had given his statement in the presence of his mother. In addressing the argument of the respondent's counsel that the court look at the plain meaning of the statute, the court found that "the facts in this case are clear. There was an advisement on October 9, which was prior to the taking of the statement on October 11. So, the statute has therefore been complied with as to the plain language of the statute."

The respondent's principal claim on appeal is that by denying his motion to suppress, the court violated § 46b-137 (a). That subsection provides in relevant part: "Any admission, confession or statement, written or oral,

made by a child to a police officer . . . shall be inadmissible in any proceeding concerning the alleged delinquency of the child making such admission, confession or statement unless made by such child in the presence of his parent . . . and *after* the parent . . . and child have been advised (1) of the child's right to retain counsel, or if unable to afford counsel, to have counsel appointed on the child's behalf, (2) of the child's right to refuse to make any statements and (3) that any statements he makes may be introduced into evidence against him." (Emphasis added.) General Statutes § 46b-137 (a). The respondent does not contend that Hicking failed to comply with the statute on October 9, 2005, when he obtained the respondent's first statement. He contends, however, that because Hicking failed to readminister the constitutional advisements and to obtain another set of waivers from the respondent and his mother, he failed to comply with the statute when he obtained the October 11, 2005 statement, and, therefore, the statement is inadmissible.

The respondent offers no case law to support his argument that Hicking was obligated to readvise him of his rights and to obtain another waiver and to consent form. On the basis of the undisputed facts and the plain language of the statute, I conclude that because Hicking obtained the respondent's October 11, 2005 statement *after* he had advised the respondent and his mother of the respondent's rights and obtained a written waiver from the respondent and a consent from his mother, the court properly concluded that Hicking complied with the statute and that the statement was admissible.

What a statute requires is a question of statutory construction; see *State* v. *Winer*, 286 Conn. 666, 676, 945 A.2d 430 (2008); a question over which a reviewing court exercises plenary review. See *State* v. *Marsh & McLennan Cos.*, 286 Conn. 454, 464, 944 A.2d 315 (2008). "The process of statutory interpretation involves the

determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . .

"When construing a statute, [a court's] fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, [a court seeks] to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs [the court] first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *State* v. *Marsh & McLennan Cos.*, supra, 286 Conn. 464–65.

I agree with the majority that § 46b-137 (a) is ambiguous given that "[t]he test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Small* v. *Going Forward, Inc.*, 281 Conn. 417, 422, 915 A.2d 298 (2007). I do not agree, however, that the statute is ambiguous because the word *after* is susceptible to more than one reasonable interpretation. Webster's Third New International Dictionary gives five definitions of the preposition *after*. Only one definition applies in the context of § 46b-137 (a): "later than a particular time or period of time." Webster's Ninth New Collegiate Dictionary defines *after* as "behind in place; subsequent to in time or order." Clearly, the statute requires that an advisement must

be given and waivers obtained before an admissible statement is taken from a child. I conclude that the statute is ambiguous, however, because it does not address the length of time that permissibly may pass between the time the juvenile is advised of his rights and signs a waiver and the time a child gives a statement that is admissible.

"It is a principle of statutory construction that a court must construe a statute as written. . . . Courts may not by construction supply omissions . . . or add exceptions merely because it appears that good reasons exist for adding them. . . . The intent of the legislature, as this court has repeatedly observed, is to be found not in what the legislature meant to say, but in the meaning of what it did say. . . . It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is the function of the legislature." (Internal quotation marks omitted.) *Doe* v. *Norwich Roman Catholic Diocesan Corp.*, 279 Conn. 207, 216, 901 A.2d 673 (2006).

In this case, the respondent gave an inculpatory statement to Hicking after the respondent and his mother had been advised of the respondent's constitutional rights and the respondent signed a waiver and his mother a consent form. Hicking obtained the respondent's October 11, 2005 statement consistent with the requirements of the plain language of the statute. If the legislature wanted to limit the time within which an admissible statement could be taken, it could have included such language in the statute. See *In re Enrique S.*, supra, 32 Conn. App. 435–36 (§ 46b-137 [a] prescribes no specific procedure but merely requires advisement be imparted to both child and his or her parent or guardian; as long as juvenile and parent or guardian have heard and understand warnings, statute is satisfied).

The petitioner argues that by amending the language of the statute from "at the time of" to simply "after," the legislature expressed its intent *not* to require subsequent warnings. This change, the petitioner argues, indicates the legislature's intent to expand the time frame within which an officer may take an admissible statement relative to when he or she advises the juvenile and his or her parent or guardian of the juvenile's rights. Whether one accepts the petitioner's argument or not, an examination of "the legislative history and circumstances surrounding its enactment . . . the legislative policy it was designed to implement, and . . . its relationship to existing legislation and common law principles governing the same general subject matter"; (internal quotation marks omitted) *Windels* v. *Environmental Protection Commission*, 284 Conn. 268, 294–95, 933 A.2d 256 (2007); provides no indication whatever that the legislature intended that the advisement be readministered in circumstances such as those presented in this case or any other case.

Section 46b-127 (a) was enacted in 1967 in response to the United States Supreme Court's decision in *In re Gault*, 387 U.S. 1, 30, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967) (juvenile proceedings " 'must measure up' " to essentials of due process and fair treatment). "The warnings required by § 46b-137 (a) are equivalent to the *Miranda*[3] warnings. . . . The purpose of the *Miranda* warnings is to enhance [a juvenile's] ability to exercise fifth amendment rights knowingly, intelligently and voluntarily. . . . Thus, the purpose of the § 46b-137 (a) warnings is to help [a juvenile] make a valid decision to speak or remain silent. . . . Provided both the [juvenile] and the [juvenile's] parents or guardian receive that information, the purpose of § 46b-137 (a) is achieved." (Citations omitted.) *In re Enrique S.*, supra, 32 Conn. App. 436. If the requirements of § 46b-137 (a) are the

---

[3] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

equivalent of *Miranda* warnings, then the law guiding the administration of *Miranda* warnings logically should guide the administration of warnings under § 46b-137 (a).

The United States Supreme Court has rejected a per se rule that warnings regarding constitutional rights must be given repeatedly. See *Wyrick* v. *Fields*, 459 U.S. 42, 103 S. Ct. 394, 74 L. Ed. 2d 214 (1982). This court in *State* v. *Marshall*, 83 Conn. App. 418, 850 A.2d 1066, cert. denied, 271 Conn. 904, 859 A.2d 564 (2004), summarized the decisions of federal courts that have considered whether the passage of time and a change of circumstances and interrogating authority demonstrate that a waiver was not knowing, intelligent and voluntary. Id., 426. "The courts have generally rejected a *per se* rule as to when a suspect must be readvised of his rights after the passage of time or a change in questioners." (Emphasis in original; internal quotation marks omitted.) Id.

B

My conclusion that Hicking complied with the plain language of § 46b-137 (a) does not end my analysis of the respondent's claim that he was denied due process as a result of Hicking's failure to advise him of his rights on October 11, 2005. The totality of the circumstances test is applicable to the waiver by a juvenile of his rights pursuant to *Miranda*. See *State* v. *Perez*, 218 Conn. 714, 728, 591 A.2d 119 (1991). "[The] totality-of-the-circumstances approach is adequate to determine whether there has been a waiver even where interrogation of juveniles is involved. . . . This includes evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." (Internal quotation

marks omitted.) Id., 725, quoting *Fare* v. *Michael C.*, 442 U.S. 707, 725, 99 S. Ct. 2560, 61 L. Ed. 2d 197 (1979). An appellate court reviews a trial court's finding that a juvenile's waiver was voluntary, intelligent and knowing by searching the record for substantial evidence that supports the court's finding. *State* v. *Perez*, supra, 728.

The record in this case reveals the following. Before interviewing the respondent about the incident that occurred on October 9, 2005, Hicking orally explained to the respondent and his mother his rights with regard to the statement and read the forms to them before they signed them.[4] The respondent's mother signed two

[4] The waiver form signed by the respondent stated: "You have the right to remain silent. If you talk to any police officer, everything you say can and will be used against you in a court of law. You have the right to consult with a lawyer before you are questioned, and may have him or her with you during any questioning. If you cannot afford a lawyer, one will be appointed for you, if you wish, before any questioning. If you wish to answer questions, you have the right to stop answering at any time. You may stop answering questions at any time if you wish to talk to a lawyer, and may have him or her with you during any further questioning.

"I have been advised:

"____ I have the right to remain silent.

"____ If I talk to any police officer anything I say can and will be used against me in a court of law.

"____ I have the right to consult with a lawyer before I answer any questions and I may have a lawyer with me during any questioning.

"____ I have the right to have a lawyer appointed for me, if I cannot afford one, before I answer any questions.

"____ I know that if I answer questions, I have the right to stop answering at any time.

"____ I may stop answering questions at any time if I wish to talk to a lawyer, and have him or her with me during any further questioning.

"I am willing to answer questions and make this statement knowing that I have and fully understand these rights. I do not want a lawyer at this time. I do make the following statements without fear, threats or promises of favor, knowing that this statement can be used for or against me in a court of law.

"Dated at _____ on the _____ day of _____ [20] _____ _____[time].

"Signed _____ "

The respondent initialed each of the lines to the left of the rights set forth and signed the waiver on October 9, 2005, at 7:40.

parental consent forms, one on behalf of the respondent and another on behalf of the respondent's brother, C, who also was involved in the incident.[5] Both the respondent and his mother initialed each of the lines adjacent to the rights listed on the forms. They each signed their respective forms at the bottom of the page.

In this case, the respondent argues that he was coerced or misled, citing Hicking's testimony at the suppression hearing, which the respondent claims was evasive as to whether Hicking had threatened the respondent with incarceration or detention. The court found, however, that the "interview process was not deceptive. It was straightforward . . . ." The respondent also argues that Hicking may have employed a

---

[5] The parental consent form signed by the respondent's mother stated the following: "I, _____ (parent/guardian) do hereby give _____ (police officer) or any other police officer consent to question and take a statement from _____ who is my son/daughter/ward. I have been advised that:

"____ He/she has the right to remain silent.

"____ If he/she does speak to any police officer, anything he/she says can and will be introduced into evidence and used against him/her in a court of law.

"____ We have the right to consult with a lawyer before he/she answers any questions and he/she may have a lawyer with him/her during any questioning.

"____ He/she has the right to have a lawyer appointed for him/her, if we cannot afford one, before he/she answers any questions.

"____ If he/she wishes to answer questions, he/she may stop answering at any time.

"____ He/she may stop answering questions at any time if we wish to talk to a lawyer and may have a lawyer present during any further questioning.

"I am willing to give my consent to any police officer to question my son/daughter/ward and take a statement, knowing that I have been advised and fully understand these rights. I do not want a lawyer present at this time. I do give my consent without fear, threats, or promises of favor. I know my consent does not waive the rights of my son/daughter/ward. I also know that any statement given can be used for or against him/her in a court of law.

"Dated at _____ on the _____ day of _____ [20] ____ _____ (time)

"Signed _____ "

The respondent's mother initialed each of the lines to the left of the rights set forth and signed the consent on October 9, 2005, at 7:40.

coercive tactic of telling the respondent that there was a videotape of him igniting the cardboard when no such videography existed. Even if this accusation was true, the use of false representations "are common investigative techniques and would rarely, if ever, be sufficient to overbear the defendant's will and to bring about a confession . . . ." (Internal quotation marks omitted.) *State* v. *Pinder*, 250 Conn. 385, 423, 736 A.2d 857 (1999); see also *In re Jonathan M.*, 46 Conn. App. 545, 552, 700 A.2d 1370 (fact that detective and mother told juvenile they knew he was lying did not constitute coercion undermining trustworthiness of confession), cert. denied, 243 Conn. 930, 701 A.2d 661 (1997). The court's finding that the interview process was not deceptive is supported by the record.

Moreover, there is no evidence whatever in the record that the respondent failed to understand his rights prior to giving Hicking the October 11, 2005 statement; or that he did not understand the legal concepts involved; or that he failed to understand the English language; or that he suffered from any emotional, psychiatric, mental or physical limitations that would interfere with his ability to knowingly and intelligently waive his rights; or that he was intoxicated or confused. See, e.g., *State* v. *Perez*, supra, 218 Conn. 728–29.

The evidence in the sparse record indicates that the respondent understood what he was doing when he gave the October 11, 2005 statement. The fact that approximately fifty hours had elapsed between his two encounters with Hicking does not provide a basis to conclude that the respondent failed to understand the import of what he was doing on October 11, 2005. "Courts have held that the mere passage of time between when a defendant is advised of his *Miranda* rights and when he gives a statement does not necessarily render the confession involuntary, even if the defendant is not readvised of his rights prior to giving a

statement." *State* v. *Marshall*, supra, 83 Conn. App. 426, citing numerous federal cases so holding. The court found that there was no evidence that the respondent would not have been able to remember what had transpired fifty hours before, when Hicking first advised the respondent and his mother of his rights.

The fact that the respondent's mother was present on both October 9 and 11, 2005, is of particular significance. Requiring the presence of a parent or guardian at the time a statement is given is to ensure that the investigation is not coercive and that the statement is given knowingly, intelligently and voluntarily.[6] Judge Fuger found that there was no indication that the respondent's mother was restricted in her ability to understand the respondent's rights or his waiver of them. In response to a question from defense counsel whether he had employed any trickery to obtain a statement from the respondent on October 11, 2005, Hicking

---

[6] The majority states that in enacting General Statutes § 46b-137 (a), the legislature intended to provide a juvenile with protection that goes beyond the purpose of *Miranda* in response to *In re Gault*. As this court said in *In re Enrique S.*, supra, 32 Conn. App. 436, the purpose of the statute's warnings is to help an accused make a valid decision to speak or remain silent. The United States Supreme Court made clear, on the basis of several factual scenarios where adolescent boys were removed from their homes and subjected to lengthy police interrogations in the absence of their parents, that not only were the admissions coerced but also their trustworthiness was in doubt. *In re Gault*, supra, 387 U.S. 42–57. "[A]uthoritative opinion has cast formidable doubt upon the reliability and trustworthiness of 'confessions' by children." Id., 52. "If counsel was not present for some permissible reason when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair." Id., 55.

The concerns of the United States Supreme Court are not at issue here. Hicking spoke with the respondent's mother, who was advised of the respondent's rights and signed a consent form. The respondent and his mother spoke in private before the respondent gave a statement on October 11, 2005. The mere presence of the respondent's mother ameliorates the court's concerns regarding not only coercion but also the trustworthiness of a confession obtained by reason of adolescent idiosyncrasies. The respondent's mother permitted him to give the statement.

testified: "I remember mostly speaking with [his mother] with regards to this, because that's the mother, and that's the one that obviously has to make the approval, as well, as to the statement." The respondent and his mother were with Hicking and DiMauro in the kitchen of the family home. Hicking testified that the respondent and his mother "left the room momentarily to discuss whether or not, probably, he should speak to me about this, and then came back, and this (the statement) was completed."[7]

The majority states that "[w]e do not know what the respondent and his parent discussed when they left the room prior to the respondent's giving his second statement because there is no evidence of that conversation. It would only be speculation and would be improper to assume that they were discussing whether he should remain silent." Given the circumstances, I disagree. It is hard to imagine that the respondent and his mother were discussing anything other than the extent of his involvement in the fire or whether he should give a second statement. Drawing reasonable inferences from the undisputed facts under circumstances such as those present in this case is not speculation. "As the trier of fact, the court had a duty to draw reasonable inferences from the testimony and other evidence." *Lusa* v. *Grunberg*, 101 Conn. App. 739, 754 n.8, 923 A.2d 795 (2007).[8] The fact that the respondent

---

[7] DiMauro testified in part: "I remember [the respondent] and his mom leaving the room together to speak. She stated that she wanted to speak to her son, and I remember her and her son leaving the room together."

[8] Trial courts routinely instruct juries that they may draw reasonable inferences from the factual circumstances. "The only way in which a jury can ordinarily determine what a person's purpose was at any given time, aside from that person's own statements or testimony, is by determining what the person's conduct was and what the circumstances were surrounding that conduct, and from that, infer what the person's purpose was." (Internal quotation marks omitted.) *State* v. *Schultz*, 100 Conn. App. 709, 714–15, 921 A.2d 595, cert. denied, 282 Conn. 926, 926 A.2d 668 (2007).

and his mother left the room, had a discussion and returned, at which point the respondent gave a second statement, in context, clearly suggests that they understood their rights and were prepared to waive them. Compare *In re Jonathan M.*, supra, 46 Conn. App. 549 (mother and juvenile offered time to speak privately). For all of the foregoing reasons, I conclude that it was not improper for the court to deny the respondent's motion to suppress.

## II

The respondent claims that by admitting the October 11, 2005 statement into evidence, Judge Graziani violated the respondent's state and federal constitutional rights against self-incrimination. Furthermore, because the statement was the only evidence the petitioner produced that the respondent had been involved in lighting the fire and that his October 9, 2005 statement was false, admitting the statement was harmful error. I agree with Judge Fuger's determination that the respondent was not in custody at the time he gave the October 11, 2005 statement and that his constitutional rights were not violated.

## III

The respondent claims that it was improper for Judge Graziani to rely on Judge Fuger's ruling on the motion to suppress when he overruled the respondent's objection to the October 11, 2005, statement. I disagree.

At trial, the respondent objected to the admission of his October 11, 2005 statement on the same grounds presented in his motion to suppress. Judge Graziani heard evidence of the circumstances under which the statement had been taken and had a copy of Judge Fuger's ruling on the motion to suppress. Judge Graziani adopted Judge Fuger's ruling as the law of the case.

"Where a matter has already been put in issue, heard and ruled on pursuant to a motion to suppress, the court on the subsequent trial, although not conclusively bound by the prior ruling, may, if it is of the opinion that the issue was correctly decided, properly treat it as the law of the case, in the absence of some new or overriding circumstance." *State* v. *Mariano*, 152 Conn. 85, 91, 203 A.2d 305 (1964), cert. denied, 380 U.S. 943, 85 S. Ct. 1025, 13 L. Ed. 2d 962 (1965). In this instance, there were no new or overriding circumstances presented to Judge Graziani, and I conclude that he permissibly treated Judge Fuger's ruling as the law of the case.

For all of the foregoing reasons, I respectfully dissent.