# IN RE KEVIN K.*
## (SC 18233)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille,
Zarella and McLachlan, Js.**

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued April 27—officially released November 30, 2010

*Raheem L. Mullins*, assistant state's attorney, with whom, on the brief, were *Matthew C. Gedansky*, state's attorney, and *Joseph J. Kristan, Jr.*, former juvenile prosecutor, for the appellant (petitioner).

*Jon D. Golas*, for the appellee (respondent).

*Opinion*

PALMER, J. The petitioner, the state of Connecticut, appeals, following our granting of certification, from the judgment of the Appellate Court, which reversed the trial court's judgment adjudicating the respondent minor, Kevin K., delinquent for having committed the crimes of reckless burning in violation of General Statutes § 53a-114 and making a false statement in the second degree in violation of General Statutes § 53a-157b. The petitioner claims, contrary to the conclusion of the Appellate Court, that the trial court properly denied the respondent's motion to suppress notwithstanding General Statutes (Rev. to 2005) § 46b-137 (a),[1] which provides that no statement made by a child to a police officer shall be admissible in any delinquency proceeding unless the statement was made in the presence of a parent and "after the parent . . . and child have been advised" of the child's constitutional rights. Specifically, the petitioner contends that the trial court properly

---

[1] General Statutes (Rev. to 2005) § 46b-137 (a) provides: "Any admission, confession or statement, written or oral, made by a child to a police officer or Juvenile Court official shall be inadmissible in any proceeding concerning the alleged delinquency of the child making such admission, confession or statement unless made by such child in the presence of his parent or parents or guardian and after the parent or parents or guardian and child have been advised (1) of the child's right to retain counsel, or if unable to afford counsel, to have counsel appointed on the child's behalf, (2) of the child's right to refuse to make any statements and (3) that any statements he makes may be introduced into evidence against him."

All references to § 46b-137 in this opinion are to the 2005 revision.

determined that, under the circumstances presented, the police, having advised the respondent and his mother of the respondent's rights in accordance with § 46b-137 (a), were not required to advise the respondent and his mother again before obtaining a statement from the respondent two days after the original advisement. We agree with the petitioner that the Appellate Court improperly concluded that the respondent was entitled to suppression of the statement. As an alternate ground for affirming the judgment of the Appellate Court, the respondent contends that his statement was obtained in violation of his rights under *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). We reject this claim and, therefore, reverse the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following relevant facts and procedural history. "During the course of investigating [a complaint that a group of children had been burning cardboard boxes] outside a Family Dollar store in [the town of] Rockville on October 9, 2005, Officer Charles Hicking of the Vernon police department interviewed the respondent at his home. Prior to commencing the interview on October 9, Hicking fully advised the respondent and his mother of the respondent's constitutional rights pursuant to § 46b-137 (a). Hicking had the respondent execute a juvenile waiver form[2] and had [the respondent's] mother

---

[2] The waiver form that the respondent signed provides in relevant part: "You have the right to remain silent. If you talk to any police officer, everything you say can and will be used against you in a court of law. You have the right to consult with a lawyer before you are questioned, and may have him or her with you during any questioning. If you cannot afford a lawyer, one will be appointed for you, if you wish, before any questioning. If you wish to answer questions you have the right to stop answering at any time. You may stop answering questions at any time if you wish to talk to a lawyer, and may have him or her with you during any further questioning.

"I have been advised:

"____ I have the right to remain silent.

"____ If I talk to any police officer anything I say can and will be used against me in a court of law.

execute a parental consent form,[3] both acknowledging that they had been advised of the respondent's rights. The respondent then made a written statement in which he [admitted to being present during the burning incident] but denied [setting] anything on fire.

"Hicking next interviewed A, another minor child who was involved in the incident. A provided Hicking

"____ I have the right to consult with a lawyer before I answer any questions and I may have a lawyer with me during any questioning.

"____ I have the right to have a lawyer appointed for me, if I cannot afford one, before I answer any questions.

"____ I know that if I answer questions, I have the right to stop answering at any time.

"____ I may stop answering questions at any time if I wish to talk to a lawyer, and have him or her with me during any further questioning.

"I am willing to answer questions and make this statement knowing that I have and fully understand these rights. I do not want a lawyer at this time. I do make the following statements without fear, threats or promises of favor, knowing that this statement can be used for or against me in a court of law. . . ."

The respondent initialed each of the lines explaining his rights and signed and dated the waiver form on October 9, 2005.

[3] The parental consent form signed by the respondent's mother provides in relevant part: "I, _____ (parent/guardian) do hereby give _____ (police officer) or any other police officer consent to question and take a statement from _____ who is my son/daughter/ward. I have been advised that:

"____ He/she has the right to remain silent.

"____ If he/she does speak to any police officer, anything he/she says can and will be introduced into evidence and used against him/her in a court of law.

"____ We have the right to consult with a lawyer before he/she answers any questions and he/she may have a lawyer with him/her during any questioning.

"____ He/she has the right to have a lawyer appointed for him/her, if we cannot afford one, before he/she answers any questions.

"____ If he/she wishes to answer questions, he/she may stop answering at any time.

"____ He/she may stop answering questions at any time if we wish to talk to a lawyer and may have a lawyer present during any further questioning.

"I am willing to give my consent to any police officer to question my son/daughter/ward and take a statement, knowing that I have been advised and fully understand these rights. I do not want a lawyer present at this time. I do give my consent without fear, threats, or promises of favor. I know my consent does not waive the rights of my son/daughter/ward. I also know that any statement given can be used for or against him/her in a court of law. . . ."

with information that implicated the respondent in the incident. As a result of this information, Hicking returned to the respondent's home on October 11, 2005, [this time accompanied by Officer Kristen DiMauro][4] to interview [the respondent] again regarding the contradictions between his statement and [A's] statement . . . . Hicking conducted the second interview of the respondent in the presence of [the respondent's] mother. [Before the second interview commenced, the respondent's mother told Hicking that she wanted to speak to the respondent privately, and she did so. Thereafter] [t]he respondent gave a second statement [in which he admitted to setting a box on fire and to lying in his previous statement]. Both the respondent and his mother signed the second statement. . . . Hicking did not advise the respondent or his mother of [or remind them about] the respondent's rights [at this October 11, 2005 interview] . . . [and did not] have them execute [additional] parental consent and juvenile waiver forms.

"On the basis of the information in the second statement, Hicking issued the respondent a juvenile summons. Prior to trial, the respondent moved to suppress the October 11, 2005 statement." *In re Kevin K.*, 109 Conn. App. 206, 208–209, 951 A.2d 39 (2008). In his motion, the respondent claimed that his statement had been obtained in violation of his rights both under *Miranda* and under § 46b-137 (a) because he had not been readvised of his rights prior to the second interview. The trial court, *Fuger, J.*, rejected these claims. With respect to the respondent's *Miranda* claim, the trial court found that the respondent was not in custody when he gave his statement to Hicking, and, therefore, the police were under no constitutional obligation to advise the respondent of his rights.

The respondent's mother initialed each of the lines explaining the respondent's rights and signed and dated the consent form on October 9, 2005.

[4] DiMauro was present as part of her training but did not question the respondent or his mother.

With respect to the respondent's claim under § 46b-137 (a), the trial court observed, first, that the police had complied with the plain language of the statute because, in accordance with that language, the respondent made his statement only after he and his mother had been advised of his rights two days earlier. The court also indicated, however, that there may be circumstances when, to satisfy the advisement requirement of § 46b-137 (a), it is necessary for the police to readvise a child and his parent. The court stated that, although "[i]t is certainly better police practice" for the police to advise a juvenile suspect of his or her constitutional rights "every time the police interview [that] suspect," § 46b-137 (a) imposed no such requirement in every case. Rather, the court indicated that whether a second or subsequent advisement is necessary under § 46b-137 (a) depends on the facts of the case, including, of course, how much time has elapsed from the time that the child and parent were advised of the child's rights until the time that the statement is obtained. In the present case, the court found no evidence or reason to suggest either that the respondent or his mother had any difficulty in understanding the advisement of rights that they had received on October 9, 2005, or that they would have been unable to remember those rights approximately fifty hours later on October 11, 2005. The court concluded, therefore, that the October 9, 2005 advisement satisfied the requirements of § 46b-137 (a). Thereafter, the court, *Graziani, J.*, permitted the petitioner to use the respondent's statement of October 11, 2005, at his delinquency hearing, following which the court rendered judgment adjudicating the respondent delinquent on the basis of his commission of the offenses of reckless burning and making a false statement in the second degree and sentenced him to six months probation.

The respondent appealed to the Appellate Court from the judgment of the trial court, claiming that his October

11, 2005 statement had been obtained in violation of § 46b-137 (a) because that provision required Hicking to readvise the respondent and his mother of the respondent's rights. *In re Kevin K.*, supra, 109 Conn. App. 210. The respondent also claimed, contrary to the finding of the trial court, that he was in custody when he provided the October 11, 2005 statement and, consequently, that Hicking's failure to readvise him prior to obtaining that statement violated his constitutional rights under *Miranda.* Id., 208. The Appellate Court agreed with the respondent that § 46b-137 (a) required Hicking to readvise the respondent and his mother prior to obtaining the second statement and, on that basis, reversed the judgment of the trial court.[5] Id., 223.

In reaching its determination, the Appellate Court first concluded that the text of § 46b-137 (a) is ambiguous as to the need for readvisement when there has been a lapse or interruption in questioning. Id., 211–13. The Appellate Court determined that § 46b-137 (a) reasonably could be understood either to allow the admissibility of statements given at any point "after" the parent and the child initially have been advised of their rights, no matter how much time has passed since that first advisement, or to require a more proximate advisement. Id., 213. In light of this textual ambiguity, the Appellate Court turned to the legislative history for assistance in determining the intent of the legislature

---

[5] In light of its conclusion that Hicking's failure to readvise the respondent and his mother under § 46b-137 (a) entitled the respondent to suppression of his October 11, 2005 statement, the Appellate Court majority did not address the respondent's claim under *Miranda.* See *In re Kevin K.*, supra, 109 Conn. App. 208 n.3. The Appellate Court also did not address a third claim that the respondent raised, namely, that the trial court, *Graziani, J.,* improperly had relied on the law of the case doctrine in adopting the decision of the court, *Fuger, J.,* to deny the respondent's motion to suppress. See id., 208 and n.3. We note that the respondent has not renewed this latter claim as an alternative ground for affirmance, and, therefore, that claim is not before us.

with respect to the necessity of a second or subsequent advisement. See generally id., 213–17.

The Appellate Court observed that the legislature had enacted General Statutes (Rev. to 1968) § 17-66d, the predecessor to § 46b-137 (a), in response to *In re Gault*, 387 U.S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967), in which the United States Supreme Court, expressing its concerns for the special vulnerabilities of juveniles, concluded that the constitutional right to due process and the privilege against self-incrimination apply equally to proceedings in juvenile court as to adult proceedings, and, as a result, a juvenile in police custody must be advised of his or her *Miranda* rights. Id., 41, 55; see *In re Kevin K.*, supra, 109 Conn. App. 213–14. The Appellate Court noted that, even though the warnings required by § 46b-137 (a) "are equivalent to" those required by *Miranda*, the additional requirements that a parent must be present during questioning and that both parent and child must be advised of the child's rights, even in noncustodial settings, reflect the legislature's view that such "additional safeguards [are] necessary in the juvenile context in order to address the United States Supreme Court's concern that, with a child, it is not just coercion, suggestion and ignorance that could lead to an involuntary admission but also to 'adolesecent fantasy, fright or despair.' *In re Gault*, supra, [55]." *In re Kevin K.*, supra, 217–18. The Appellate Court also observed that it previously had considered the legislative history of § 46b-137 (a) and concluded that the purpose of the warnings required thereunder, like the purpose of *Miranda* warnings, "is to help [a child] make a valid decision to speak or remain silent. . . . *In re Enrique S.*, 32 Conn. App. 431, 436, 629 A.2d 476 (1993)." (Internal quotation marks omitted.) *In re Kevin K.*, supra, 217.

The Appellate Court then summarized its interpretation of § 46b-137 (a) with respect to the issue raised in

the present case: "[W]e now view the language of the statute through the prism of its legislative history and [the] intent of the legislature. Having determined that the purpose of the statute is to help the child and his parent or guardian decide whether to make a voluntary admission or to remain silent, we conclude that the advisement of rights must be given in a manner that furthers the purpose of the statute. This conclusion is in keeping with the case law concerning this statute in which our courts have held that the requirements of the statute are not merely perfunctory." Id., 218. The Appellate Court further explained that, because "the advisement of the child's rights is not simply a pro forma requirement of the statute but an integral component . . . designed to ensure that the child and the parent or guardian have made a valid decision to make a voluntary admission"; id., 220; "a facts and circumstances analysis" should be utilized "to determine whether this requirement was satisfied . . . ." Id.

Relying on the fact that two days had elapsed since the original advisement, and emphasizing that Hicking had returned to the respondent's residence on October 11, 2005, to confront the respondent and his mother with information suggesting that the respondent had lied to Hicking during the initial interview, the Appellate Court concluded: "Without the advisement of rights and with a police officer confronting the child with a contradictory and inculpatory statement of another, a child and his parent might perceive the child's options . . . to be either to reiterate his initial statement or to change his statement; they might not contemplate the option of remaining silent because of a perceived need to respond to the contradictory statement." Id., 222. In light of this conclusion, the Appellate Court reversed the judgment of the trial court and remanded the case for a new trial. Id., 223.

Judge Douglas S. Lavine dissented from the majority opinion of the Appellate Court. Although he agreed with the majority that § 46b-137 (a) is ambiguous as applied to the facts of this case,[6] he concluded, on the basis of the relevant legislative history and common-law principles, that no readvisement was necessary in the present case. *In re Kevin K.*, supra, 109 Conn. App. 228–31 (*Lavine, J.*, dissenting). Specifically, Judge Lavine explained that "an examination of the legislative history [of § 46b-137 (a)] and [the] circumstances surrounding its enactment . . . the legislative policy it was designed to implement, and . . . its relationship to existing legislation and common law principles governing the same general subject matter . . . provides no indication whatever that the legislature intended that the advisement be readministered in circumstances such as those presented in [the present] case or any other case." (Citation omitted; internal quotation marks omitted.) Id., 230 (*Lavine, J.*, dissenting).

Judge Lavine agreed with the Appellate Court majority, however, that § 46b-137 (a) was enacted in response to *In re Gault*, and he quoted from *In re Enrique S.*, supra, 32 Conn. App. 431, in explaining the purpose of § 46b-137 (a): " 'The warnings required by § 46b-137 (a) are equivalent to the *Miranda* warnings. . . . The purpose of the *Miranda* warnings is to enhance [an accused's] ability to exercise fifth amendment rights knowingly, intelligently and voluntarily. . . . Thus, the

---

[6] In contrast to the Appellate Court majority, which had concluded that § 46b-137 (a) is ambiguous with respect to the issue of whether readvisement is necessary because the word "after" in that statute has "different significations"; *In re Kevin K.*, supra, 109 Conn. App. 213; Judge Lavine found that the statute is ambiguous not because of any lack of clarity in the word "after"; id., 228 (*Lavine, J.*, dissenting); but, rather, "because [the statute] does not address the length of time that permissibly may pass between the time the [child] is advised of his rights and signs a waiver [on the one hand] and the time [the] child gives a statement that is admissible [on the other]." Id., 229 (*Lavine, J.*, dissenting).

purpose of the . . . warnings [required under § 46b-137 (a)] is to help [a juvenile] make a valid decision to speak or remain silent. . . . Provided both the [juvenile] and the [juvenile's] parents or guardian receive that information, the purpose of § 46b-137 (a) is achieved.' . . . *In re Enrique S.*, supra, [436].' " *In re Kevin K.*, supra, 109 Conn. App. 230 (*Lavine, J.*, dissenting). Judge Lavine further explained that, because "the requirements of § 46b-137 (a) are the equivalent of *Miranda* warnings . . . the law guiding the administration of *Miranda* warnings logically should guide the administration of warnings under § 46b-137 (a)." Id., 230–31 (*Lavine, J.*, dissenting). After observing that "courts have generally rejected a per se rule as to when a suspect must be readvised of his rights after the passage of time or a change in questioners"; (internal quotation marks omitted) id., 231 (*Lavine, J.*, dissenting); Judge Lavine reviewed the facts to determine whether they supported the trial court's determination that, under the totality of the circumstances, there was no need for Hicking to have readvised the respondent and his mother of the respondent's rights. See id., 231–37 (*Lavine, J.*, dissenting).

Judge Lavine determined that the trial court reasonably had concluded that the first advisement on October 9, 2005, was adequate to ensure that the respondent understood his rights before waiving them for a second time on October 11, 2005. See id., 234–35, 237 (*Lavine, J.*, dissenting). In support of his conclusion, Judge Lavine observed that Hicking had advised both the respondent and the respondent's mother about the respondent's rights on October 9, 2005, and both had signed forms expressing their understanding of those rights. Id., 232–33 (*Lavine, J.*, dissenting). After also observing that the trial court's finding that the interview process on October 11, 2005, had not been deceptive was supported by the record; id., 234 (*Lavine, J.*, dissenting);

Judge Lavine further stated that "there [was] no evidence . . . in the record that the respondent failed to understand his rights prior to giving Hicking the October 11, 2005 statement; or that he did not understand the legal concepts involved; or that he failed to understand the English language; or that he suffered from any emotional, psychiatric, mental or physical limitations that would interfere with his ability to knowingly and intelligently waive his rights; or that he was intoxicated or confused." Id. Finally, Judge Lavine noted the "particular significance" of the fact that the respondent's mother was present with him on both October 9 and October 11, 2005. Id., 235 (*Lavine, J.*, dissenting).

Judge Lavine also addressed the respondent's contention that the trial court improperly determined that he was not in custody when he gave the October 11, 2005 statement and, therefore, that the failure of the police to advise him of his *Miranda* rights lacked constitutional significance. See id., 237 (*Lavine, J.*, dissenting). Judge Lavine concluded that the facts supported the trial court's finding that the respondent was not in custody on October 11, 2005, and, consequently, that the police had no constitutional obligation to advise the respondent of his rights. See id. Accordingly, Judge Lavine disagreed with the conclusion of the Appellate Court majority that the respondent is entitled to a new trial.

We granted the petitioner's petition for certification to appeal, limited to the issue of whether the Appellate Court properly construed § 46b-137 (a) as requiring the police to readvise the respondent of his rights before he gave a second statement. *In re Kevin K.*, 289 Conn. 930, 958 A.2d 159 (2008). As we previously indicated, the respondent has raised an alternative ground for affirmance of the Appellate Court's judgment, namely, that, contrary to the determination of the trial court, he was in police custody when he gave his statement

to the police on October 11, 2005, and, consequently, the failure of the police to advise him of his *Miranda* rights on that occasion entitled him to the suppression of that statement. We resolve both issues in favor of the petitioner.

## I

The petitioner claims that the Appellate Court improperly concluded that § 46b-137 (a) required the police to readvise the respondent and his mother of his rights prior to any questioning of him on October 11, 2005. In essence, the petitioner contends that the trial court reasonably determined that readvisement was not necessary under the facts and circumstances presented.

Before addressing the merits of the petitioner's claim, it is useful to identify those aspects of the Appellate Court opinion with which the petitioner does *not* take issue. First, the petitioner acknowledges that § 46b-137 (a) was enacted in response to the decision of the United States Supreme Court in *In re Gault*, supra, 387 U.S. 1, which extended constitutional protections to juvenile proceedings and recognized the unique susceptibilities of juvenile suspects. Second, the petitioner agrees that § 46b-137 (a) is ambiguous with respect to whether readvisement may be necessary under any particular factual scenario. Third, the petitioner also acknowledges that the purpose of § 46b-137 (a) is to assist juvenile suspects by ensuring that they are aware of and understand their rights before any police questioning so that they can make a knowing and informed decision about whether to waive those rights. Fourth, the petitioner agrees that, ultimately, whether readvisement is required depends on whether such an advisement would have been necessary to satisfy that statutory purpose. Finally, the petitioner agrees that, in ascertaining whether readvisement is required under § 46b-137 (a), we apply a totality of the circumstances

test, the same test that is applied to determine whether the police are required to readvise a suspect of his *Miranda* rights following a lapse or interruption in the suspect's questioning.[7]

Thus, the petitioner's only material point of disagreement with the Appellate Court stems from that court's application of the totality of circumstances test to the facts of this case. Specifically, the petitioner maintains that the trial court properly concluded that it was not necessary for Hicking to readvise the respondent of his rights prior to questioning him on October 11, 2005, because he and his mother had been properly advised of the respondent's rights on October 9, 2005, and, upon consideration of all the relevant facts and circumstances, there is no reason to conclude that they would have forgotten those rights two days later. We agree with the petitioner.[8]

---

[7] "The [United States] Supreme Court has eschewed per se rules mandating that a suspect be re-advised of his rights in certain fixed situations in favor of a more flexible approach focusing on the totality of the circumstances. See *Wyrick* v. *Fields*, 459 U.S. 42, 48–49, 103 S. Ct. 394, 74 L. Ed. 2d 214 (1982) (per curiam) (rejecting per se rule requiring police to re-advise suspect of his rights before questioning him about results of polygraph examination). Consistent with *Wyrick*'s admonition against unjustifiable restriction[s] on reasonable police questioning . . . [t]he courts have generally rejected a per se rule as to when a suspect must be readvised of his rights after the passage of time or a change in questioners." (Citation omitted; internal quotation marks omitted.) *United States* v. *Rodriguez-Preciado*, 399 F.3d 1118, 1128, amended in part on other grounds, 416 F.3d 939 (9th Cir. 2005). We note, however, that, because of the factual differences between readvisement cases arising under *Miranda* and similar cases arising under § 46b-137 (a)—in contrast to *Miranda* cases, police questioning in readvisement cases involving § 46b-137 (a) is likely to have taken place in a noncustodial setting, in the presence of the suspect's parents or guardian—*Miranda* readvisement cases bear only limited relevance to cases involving § 46b-137 (a).

[8] We note that, although the Appellate Court majority acknowledges that the advisement requirement of § 46b-137 (a) is "designed to ensure that the child and the parent or guardian have made a valid decision to make a voluntary admission"; *In re Kevin K.*, supra, 109 Conn. App. 220; it identifies the purpose of the statute in somewhat different terms, that is, "to help the child and his parent or guardian decide whether to make a voluntary admis-

sion or to remain silent . . . ." Id., 218; see also id., 221 ("[a]s we have concluded, to determine whether the statement was taken after the advisement of rights, the court must determine whether the advisement of rights was given in a manner to help the respondent and his parent make a valid decision about whether to remain silent or to make a voluntary admission"). On the basis of this latter explication of the statute's purpose, the Appellate Court majority asserts that "the question is not whether there is evidence demonstrating that the respondent and his parent forgot what the respondent's rights were but, rather, whether the [petitioner] proved that the respondent and his parents were properly assisted in their decision regarding whether the respondent should speak or remain silent." Id., 222; see also id., 221 ("the question, when evaluating the facts of this case, is not whether the advisement of rights on October 9, 2005, expired but, rather, whether the purpose of the statute was achieved").

We agree with the Appellate Court's observation that the advisement requirement of § 46b-137 (a) is intended to ensure that any statement that the police obtain from a juvenile is the product of a knowing and intelligent waiver of the juvenile's right to remain silent. Indeed, that is the "help" or assistance that the legislature intended to provide to juveniles and their parents by virtue of its enactment of § 46b-137 (a). Thus, although it is true that the general purpose of § 46b-137 (a) is to help or assist juveniles and their parents in making a valid decision about whether to speak to the police or to remain silent, that help or assistance is accomplished by ensuring that the juvenile and his or her parent understand their rights. Consequently, we disagree with the Appellate Court majority that the question of whether a juvenile and his or her parent are likely to remember an earlier advisement bears no relation to the question of whether a subsequent readvisement is necessary. Indeed, when time has elapsed between an advisement and the statement sought to be suppressed, the issue necessarily will require a determination of the extent to which the passage of time adversely affected the ability of the juvenile and the parent to recall and understand their rights. We therefore agree with the following observation of the court in *United States* v. *Pruden*, 398 F.3d 241 (3d Cir. 2005), which, although made in the context of a claim that the defendant was entitled to a readvisement of his *Miranda* rights, is equally applicable to the present case: "[T]he question of whether a time lapse renders *Miranda* warnings stale may be reduced to answering two questions: (1) At the time the *Miranda* warnings were provided, did the defendant know and understand his rights? (2) Did anything occur between the warnings and the statement, whether the passage of time or other intervening event, [that] rendered the defendant unable to consider fully and properly the effect of an exercise or waiver of those rights before making a statement to law enforcement officers?" (Internal quotation marks omitted.) Id., 246–47; see also *Brown* v. *State*, 661 P.2d 1024, 1031 (Wyo. 1983) ("[w]e perceive the rule . . . to be that the court has a duty to determine under all the circumstances whether the prior warnings were effective to sufficiently advise the accused of his constitutional rights so that the prior voluntary and knowing waiver of those rights continued its efficacy").

In cases involving the issue of whether it was necessary for the police to readvise a suspect of his *Miranda* rights, courts have identified a number of nonexclusive factors relevant to this inquiry, which we conclude are also applicable to the readvisement inquiry under § 46b-137 (a). They include (1) the length of time that has passed between the initial warnings and the subsequent interrogation, (2) whether the warnings and interrogation occurred in the same location, (3) whether the officers who gave the warnings were the same as those who conducted the subsequent interview, (4) whether the subsequent interview concerned the same or new offenses and facts, (5) the physical settings of the advisement and interviews, (6) whether the officer reminded the suspect of his rights before resuming questioning, (7) whether the suspect confirmed that he understood his rights or manifested an awareness of his rights, and (8) the apparent mental and emotional state of the suspect. See *United States* v. *Pruden*, 398 F.3d 241, 246–48 (3d Cir. 2005); *Brown* v. *State*, 661 P.2d 1024, 1031 (Wyo. 1983). Thus, in the present case, we consider the foregoing factors, along with "the [child's] age, experience, education, background, and intelligence, and . . . whether he [or she] has the capacity to understand the warnings given him [or her], the nature of [the child's] [f]ifth [a]mendment rights, and the consequences of waiving those rights." *Fare* v. *Michael C.*, 442 U.S. 707, 725, 99 S. Ct. 2560, 61 L. Ed. 2d 197 (1979) (discussing totality of circumstances approach as it applies to *Miranda* waivers by juveniles); accord *State* v. *Ledbetter*, 263 Conn. 1, 18, 818 A.2d 1 (2003). Finally, the presence and involvement of one or both of the child's parents or guardians also is an important consideration.

We conclude that the relevant facts and circumstances support the trial court's conclusion that Hicking was not required to readvise the respondent before

questioning him a second time on October 11, 2005.[9] First, before interviewing the respondent on October 9, 2005, Hicking orally advised the respondent and his mother of the respondent's rights as set forth on two separate forms, a waiver form and a parental consent form, which the respondent and his mother, respectively, initialed, signed and dated. In fact, the respondent's mother signed two parental consent forms, one for the respondent and a second for the respondent's brother, who also was a suspect in the incident. The trial court found that there was nothing in the record to indicate that either the respondent or his mother was unable to remember those rights two days later, on October 11, 2005, when the police returned to interview the respondent a second time.

It was the same officer, Hicking, who again questioned the respondent on October 11, 2005, and the interviews both concerned the same incident. Furthermore, the misconduct under investigation was not particularly serious, and the trial court found that the interview process had been "straightforward" and "not deceptive." Of course, the respondent was not incarcerated at the time of the second interview; rather, the questioning took place in the familiar surroundings of his home, and his mother was there, with him, at all times during both interviews. As Judge Lavine stated in his dissenting opinion, the mother's presence "ameliorates [any] concerns regarding not only coercion but also the trustworthiness of a confession obtained by reason of adolescent idiosyncracies." *In re Kevin K.*, supra, 109 Conn. App. 235 n.6 (*Lavine, J.*, dissenting).

---

[9] It bears noting that, because the totality of the circumstances test provides little guidance to the police officer in the field who must decide whether a readvisement is necessary for purposes of § 46b-137 (a), that officer best can ensure compliance with the advisement requirement of § 46b-137 (a) simply by readvising the child and his or her parent or guardian prior to each interview.

Finally, the respondent and his mother exercised their rights to speak privately with one another before the respondent gave his statement to Hicking. Thus, the respondent's mother was not just physically present but also played an active role in consulting with the respondent. Although the Appellate Court majority asserts that it "would only be speculation" to presume what they were discussing when they spoke privately; id., 222; we agree with Judge Lavine that the trial court reasonably could have inferred that they were deciding how best to proceed. As Judge Lavine stated, "[i]t is hard to imagine that the respondent and his mother were discussing anything other than the extent of [the respondent's] involvement in the fire or whether he should give a second statement. Drawing reasonable inferences from the undisputed facts under circumstances such as those present in this case is not speculation. As the trier of fact, the [trial] court had a duty to draw reasonable inferences from the testimony and other evidence. . . . The fact that the respondent and his mother left the room, had a discussion and returned, at which point the respondent gave a second statement, in context, clearly suggests that they understood their rights and were prepared to waive them." (Citation omitted; internal quotation marks omitted.) Id., 236–37 (*Lavine, J.*, dissenting).

We acknowledge that the amount of time that elapsed from Hicking's advisement of the respondent and his mother on October 9, 2005, until the respondent provided Hicking with his statement on October 11, 2005, is a factor favoring readvisement. The respondent's relatively young age and the fact that Hicking confronted him with a statement contradicting his earlier version of the incident—a statement that the respondent is likely to have found disconcerting—also are considerations that militate in favor of readvisement. Nevertheless, in light of the totality of the circumstances, we

disagree with the Appellate Court that the trial court reasonably could not have concluded that Hicking was not required to readvise the respondent and his mother in accordance with § 46b-137 (a).[10]

## II

The respondent claims, as an alternative ground for affirming the judgment of the Appellate Court, that the trial court improperly denied his motion to suppress the statement that he gave to Hicking on October 11, 2005, because the court improperly determined that he was not in custody when he made that statement.[11] We disagree.

[10] The respondent claims that the police obtained his October 11, 2005 statement in violation of his right to due process and that the statement was not given knowingly, intelligently and voluntarily. "To be valid, a waiver must be voluntary, knowing and intelligent. . . . The state has the burden of proving by a preponderance of the evidence that the defendant voluntarily, knowingly and intelligently waived [his or her] *Miranda* rights." (Internal quotation marks omitted.) *State* v. *Canales*, 281 Conn. 572, 590, 916 A.2d 767 (2007). Furthermore, "[i]n considering whether a statement is voluntarily made, [t]he test . . . is whether an examination of all the circumstances discloses that the conduct of law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined . . . ." (Internal quotation marks omitted.) Id. In essence, the respondent contends that § 46b-137 (a) imparts such a right to juvenile suspects who are questioned in a noncustodial setting. There is nothing in the record, however, to indicate that the police engaged in misconduct toward the respondent or that his statement otherwise was the product of police coercion or overreaching. Moreover, the respondent and his mother were advised of the respondent's rights on October 9, 2005, the trial court reasonably found that they understood those rights, and the record also supports the court's conclusion that they continued to be aware of those rights on October 11, 2005. Accordingly, the constitutional standard was satisfied. We therefore need not address the respondent's contention that § 46b-137 (a) itself requires a showing that the respondent's statement was given knowingly, intelligently and voluntarily.

[11] We note that, although the respondent purports to rely on both the federal and the state constitutions, he has failed to provide a separate analysis under the Connecticut constitution. In the absence of a separately briefed and analyzed state constitutional claim, we deem it to be abandoned. See, e.g., *State* v. *Canales*, 281 Conn. 572, 592 n.12, 916 A.2d 767 (2007).

In its ruling following the suppression hearing, the trial court determined that the respondent was not in custody when he gave his October 11, 2005 statement because "[h]e was in his own home, was not being detained in any way and was free." The trial court further found that the interview process was "straightforward" and "not deceptive," and that there was no evidence of police coercion or other impropriety. In addition, at no time was the respondent in the company of the police without his mother. Finally, the police had come to the respondent's home two days earlier, spoke with him and his mother, and left.

The law applicable to *Miranda* warnings is well settled. "Two threshold conditions must be satisfied in order to invoke the warnings constitutionally required by *Miranda*: (1) the defendant must have been in custody; and (2) the defendant must have been subjected to police interrogation. . . . [A]lthough the circumstances of each case must certainly influence a determination of whether a suspect is in custody for purposes of receiving *Miranda* protection, the ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. . . . A person is in custody only if, in view of all the surrounding circumstances, a reasonable person would have believed [that] he was not free to leave. . . . Further, the United States Supreme Court has adopted an objective, reasonable person test for determining whether a defendant is in custody. . . . Thus, in determining whether *Miranda* rights are required, the only relevant inquiry is whether a reasonable person in the defendant's position would believe that he or she was in police custody of the degree associated with a formal arrest. . . .

"The defendant bears the burden of proving that he was in custody for *Miranda* purposes. . . . Two discrete inquiries are essential to determine custody: first,

what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and [to] leave. . . . The first inquiry is factual, and we will not overturn the trial court's determination of the historical circumstances surrounding the defendant's interrogation unless it is clearly erroneous. . . . The second inquiry, however, calls for application of the controlling legal standard to the historical facts. . . . The ultimate determination of whether a defendant was subjected to a custodial interrogation, therefore, presents a mixed question of law and fact, over which our review is de novo." (Internal quotation marks omitted.) *State* v. *Kirby*, 280 Conn. 361, 393–94, 908 A.2d 506 (2006).

The record amply supports the trial court's determination that the respondent was not in custody when he gave Hicking his statement on October 11, 2005. In fact, no other conclusion reasonably can be drawn from the record. Hicking questioned the respondent in his own home, with his mother present; the entire process lasted no more than thirty to forty minutes. At no point did Hicking or his colleague, DiMauro, say or do anything to suggest that the respondent or his mother were not free to terminate the interview at any time. Under the circumstances, the respondent's contention that he was subjected to custodial interrogation is wholly without merit. Consequently, Hicking had no constitutional obligation to advise the respondent of his *Miranda* rights.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.