[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO SUPPRESS STATEMENTS
The defendant, Christian Santiago ("Santiago") has moved to suppress oral statements made by him to officers of the New Haven Police Department on October 15, 1999. At that time, Santiago was fifteen years old. Santiago claims that his statements must be suppressed because the police failed to comply with General Statutes § 46b-137. For the reasons set forth below, the motion to suppress is denied.
FINDINGS OF FACT
The court conducted an evidentiary hearing regarding the motion to suppress on January 25, 2000. Based on the evidence presented at that hearing, the court finds the following facts to have been proven.
On October 15, 1999, Detective Stephen Shea and other officers of the New Haven Police Department went to Yale New Haven Hospital to investigate a complaint of a sexual assault of a three year old boy. The boy's family had noticed blood on his leg and redness around his anus. Upon being interviewed, the child victim told the police that Santiago was the one who "did it." The child victim pulled down his pants and showed the police where he had been sodomized. The police also spoke to the doctor who had examined and treated the child.
While at Yale New Haven Hospital, the police learned that Santiago and his mother were in the waiting room. Detective Shea asked them if they were willing to go to the New Haven Police Department for an interview. Both Santiago and his mother agreed. CT Page 4606 The conversation was in English. Santiago and his mother were driven to the police department in an unmarked police car that did not have a security cage between the front and back seats.
Upon arrival at the police department, Santiago and his mother went to an interview room with Detective Shea. Up to this point, there had been no language difficulties between the police and Santiago or his mother; Detective Shea, however, asked Officer Hector Valentine to act as an interpreter for Santiago's mother if needed. Detective Shea then presented Santiago and his mother with a Miranda rights waiver form that was printed in Spanish. This form was reviewed and signed by both Santiago and his mother. The form was also signed by Officer Valentine and Sergeant Joann Peterson as witnesses. Both Santiago and his mother understood their rights as stated in the form, and agreed to waive these rights and speak with the police.
Detective Shea then began the interview by asking Santiago if anything took place when he was alone with the victim. Santiago denied involvement and stated that the blood must have resulted from the child going to the bathroom. Detective Shea told Santiago that according to the doctor at the hospital, that was not the reason for the blood. Santiago then began crying and became upset; but he continued to deny involvement. Santiago's mother stated that she knew her son did not do anything.
At this point, Santiago said that he wanted to talk to Detective Shea alone. Detective Shea looked at Santiago's mother and gestured so as to ask her if that was alright. Santiago's mother stated "That's fine with me." Officer Valentine intervened and, in the presence of the mother, told Santiago "Your mom should be present here, you sure you want to speak alone?" Santiago maintained his request to speak with Detective Shea alone and his mother agreed to his request and left the room along with Officer Valentine and Sergeant Peterson. After they left, Santiago said: "I did it to him. I put my thing in him." He pointed to his groin and repeated, "I put my thing in him." Santiago stated that the victim had hit Santiago in the groin making him mad and Santiago sexually assaulted the victim in retaliation.
After Santiago made the above statements, Detective Shea had Santiago's mother and Officer Valentine return to the room. Santiago's mother had been seated a few feet away from the interview room for the three to five minutes that Santiago spoke to Detective Shea alone. Once all were back in the interview CT Page 4607 room, Detective Shea asked Santiago to repeat what he had just said. Santiago then spoke in Spanish to his mother telling her "I did it to him," "I put it in him." Santiago's mother then became hysterical stating: "I can't believe you did this." The police then asked to take a tape recorded statement from Santiago. Santiago's mother refused stating that she wanted to talk with an attorney. The interview was then concluded and Santiago and his mother were driven back home.
DISCUSSION
Santiago claims that his admissions to Detective Shea and his subsequent admission to his mother should be suppressed because the police failed to comply with General Statutes § 46b-137(a). As applicable here that statute provides:
 Any admission, confession or statement, written or oral, made by a child to a police officer . . . shall be inadmissible in any proceeding concerning the alleged delinquency of the child making such admission, confession or statement unless made by such child in the presence of his parent . . . and after the parent . . . and child have been advised (1) of the child's right to retain counsel, or if unable to afford counsel, to have counsel appointed on the child's behalf, (2) of the child's right to refuse to make any statements and (3) that any statements he makes may be introduced into evidence against him.
Santiago's suppression claim is straightforward. He asserts that since his mother was outside the interview room when his first incriminating statements were made, the statute was violated and those statements are inadmissible. With respect to the subsequent statement made to his mother, Santiago claims that it is also inadmissible as fruit of the poisonous tree. In support of these claims, Santiago relies on In Re Robert M.,22 Conn. App. 53 (1990).
In Re Robert M. involved a deliquency proceeding concerning an alleged arson. Id. 54. During an interview of the child in the presence of his father, the police officer suggested that the child's father leave the room and the father acceded to this request. Id. 55. Thereafter, in response to continued questioning, the child confessed. The father was called back into the room and the child repeated the oral confession to his father and then gave a written confession. Id. 56. The state only offered the written confession into evidence at the delinquency CT Page 4608 proceeding. Id. The Appellate Court ruled that the police questioning of the child in the absence of his parent violated § 46b-137(a) and was therefore illegal and the subsequent written statement was inadmissible under the "fruit of the poisonous tree" doctrine. Id. 59.
Santiago does not claim that his confession was involuntary, nor that the police violated his so-called Miranda rights. His sole claim, as noted above; is the alleged violation of § 46b-137(a).[1] In response, the state asserts that § 46b-137(a) does not apply to this case because Santiago is being prosecuted in the regular session of the Superior Court his case having been transferred from the juvenile session pursuant to the automatic transfer provisions of § 46b-127(a).
The issue, therefore, is whether the provisions of § 46b-137(a) apply to this case. Stated another way, the question is whether the parental presence requirement for the admission of confessions in juvenile proceedings applies to cases that have been transferred to adult court.
In State v. Ralph M., 211 Conn. 289 (1989), the Supreme Court ruled that a juvenile at a transfer hearing was not entitled to the suppression of statement allegedly obtained in violation of §46b-137(a). Id., 211 Conn. 289. The court focused on the wording of the statute that states that statements obtained in violation of its provisions "shall be inadmissible in any proceeding for delinquency against the child." Id. Since a transfer hearing was not a proceeding that adjudicated delinquency, that statute was, by its terms, not applicable. Id. The Supreme Court explicitly left open the question of whether statements obtained in violation of § 46b-137(a) would be admissible at an adjudicatory proceeding in adult court. Id., 211 Conn. 289 n. 21.
Since the Supreme Court's decision in State v. Ralph M., the legislature has amended the juvenile transfer statute twice. In 1990, the statute was amended to allow a juvenile at a transfer hearing to move to suppress admissions on the ground that the statements were obtained in violation of § 46b-137(a). See § 46b-127(a) (Rev'd. 1991). In 1995, the legislature completely revised the juvenile transfer procedure by providing for automatic transfer of cases charging an A or B felony. See PA 95-225. Moreover, the transfer hearing provisions applicable to the discretionary transfer of other cases omitted the provisions in the earlier law permitting motions to suppress. Significantly, since 1989 when the Supreme Court noted but left undecided the CT Page 4609 question of the applicability of § 46b-137(a) to adult court, the language of the statute remained unchanged. It remains, by its terms, applicable only to delinquency proceeding. Accordingly, the court finds the statute inapplicable to Santiago since his case is being adjudicated in adult court where he faces criminal conviction and not a finding of delinquency. This construction of the statute is consistent with other cases that have limited §46b-137(a)'s application to its words. See In Re Jonathan M.,46 Conn. App. 545, 554-55 (1997) (statements made to persons other than those named in that statute, not subject to parental presence requirement.) In addition, the loss of the protections of § 46b-137(a) is just one of the consequences that accompanies the transfer of a case to adult court. Others include (1) loss of confidentiality, (2) the potential for a criminal conviction and (3) exposure to substantially more severe penalties. All of which represents the legislatures judgment that serious juvenile cases should receive different treatment. State v. Cuffee,32 Conn. App. 759, 763 (1993).
Even if the parental presence provisions of § 46b-137(a) were deemed to apply to Santiago, on the present record the court finds that both he and his mother waived the statute s protections. This case is clearly distinguishable from In ReRobert M. where the police suggested that the child's father leave the interview room. Here it was Santiago who requested that his mother leave. His mother left voluntarily notwithstanding the comments of Officer Valentine who remonstrated with both Santiago and his mother regarding the mother's agreement to leave. Santiago's mother knew that she had a right to be present and her decision to waive that right was both knowing and voluntary. SeeJohnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461
(1938) (waiver must be "the intentional waiver of abandonment of a known right or privilege.")
For the reasons set forth above, the motion to suppress Santiago's statements is denied.
So Ordered at New Haven, Connecticut this 9th day of March, 2000.
Devlin, J.