J-A16023-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| BOCHETTO & LENTZ, P.C. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| A. HAROLD DATZ, ESQUIRE, AND A. HAROLD DATZ, P.C. | |
| Appellee | No. 3165 EDA 2014 |

Appeal from the Order October 16, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 03044 September Term, 2010

BEFORE:  LAZARUS, OLSON  AND PLATT,* JJ.

DISSENTING MEMORANDUM BY OLSON, J.:     **FILED FEBRUARY 05, 2016**

The Learned Majority concurs in the trial court's assessment that the claims asserted by Appellant, Bochetto & Lentz, P.C., merit no relief because:  (1) there was no established attorney-client relationship between Appellant and Jillene Pasternak ("Pasternak"); (2) Appellant received compensation and was made whole as a result of damages recovered based upon Scott Sigman's ("Sigman") improper referral of Pasternak's case to A. Harold Datz ("Datz"); and, (3) Appellant's damage claim is impermissibly speculative.  After careful review of the certified record and the parties' submissions, I, too, understand and appreciate the conclusions reached by the trial court.  I believe that Appellant's claims may be driven more by the desire to settle scores than to recover losses.  Nevertheless, as the Majority acknowledges, summary judgment may be entered **only** where there is no

* Retired Senior Judge assigned to the Superior Court.

genuine issue of material fact and it is clear that the moving party is entitled to judgment as a matter of law. Majority Memorandum at 6, *quoting* **Petrina v. AlliedGlove Corp.**, 46 A.3d 795, 797-798 (Pa. Super. 2012). With that standard in mind, I am unable to agree that the substantive law that applies in this case supports summary dismissal in favor of Datz. For this reason, I respectfully dissent.

I begin my discussion with the Majority's first conclusion that our Supreme Court's decision in **Richette v. Solomon**, 187 A.2d 910 (Pa. 1963) does not apply because there was no attorney-client relationship between Appellant and Pasternak. In **Richette**, a railroad worker fractured his ankle while at work. When efforts to resolve his claim proved unsuccessful, the worker retained Richette as counsel on a contingent fee basis. After learning that the worker retained Richette, representatives of the railroad company and its union coerced the worker to rescind his contingent fee agreement with Richette. Subsequently, the representatives of the company and the union convinced the worker to settle his claims for $8,500.00. Thereafter, Richette filed suit against the representatives of the company and union, alleging that they tortiously interfered with his contractual relationship with the worker.

At trial, Richette testified that he was entitled to a fee of $10,000.00 based on the contention that he could have recovered $30,000.00 on behalf of the worker. The jury awarded Richette $10,000.00 in compensatory

damages and $15,000.00 in punitive damages. On appeal, our Supreme Court upheld the jury's compensatory award but reduced its punitive damage award to $5,000.00.[1] The Court rejected the defendants' argument that the jury's compensatory award was excessive in view of Richette's testimony as to the value of the case and the severity of the worker's injury.

Based upon my reading of **Richette**, I would conclude that where an attorney asserts a claim that the defendant tortiously interfered with a contractual relationship with a client, the attorney may seek damages in the form of fees that could have been obtained based upon a higher case valuation than an allegedly inadequate settlement.[2] As in **Richette**, such a

_____

[1] Only a single Justice dissented in **Richette**.

[2] This Court previously held that where a group of attorneys broke away from a personal injury law firm and the trial court determined that they tortiously interfered with the law firm's clients, the firm was permitted to seek damages equal to its anticipated revenue. Applying **Richette** in that case, we explained:

> We hold that, pursuant to established tort principles and to **Richette**, [the personal injury law firm] must be awarded a money judgment reasonably equivalent to the anticipated revenue protected from outside interference that [it] would have received pursuant to the contracts had the cases remained [at the] firm. To so value the cases is not mere speculation; **see Richette**. For cases originally referred to the [law] firm by one of the breakaway attorneys, the money judgment should be half of what [the firm's] reasonable expectation would be; this comports with the employment agreements granting the breakaway attorneys half of these fees as a referral fee.

**Joseph D. Shein, P.C. v. Myers**, 576 A.2d 549, 558 (Pa. Super. 1990).

claim may be supported by testimony regarding the attorney's valuation of the case which may, in turn, rely on evidence of the severity of the client's injuries. The trial court's effort to distinguish *Richette*, on grounds that no attorney-client relationship ran between Appellant and Pasternak, is unavailing.

Under Pennsylvania law, tortious interference claims extend to prospective contractual relations. *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 471 (Pa. 1979) (tort of interference with prospective business relations is established where the plaintiff shows: (1) a prospective contractual relation; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and, (4) actual damages resulting from the defendant's conduct); *Glenn v. Point Park College*, 272 A.2d 895, 898-99 (Pa. 1971) (prospective contractual relationship requires reasonable likelihood or probability, *i.e.* something more than a mere hope or innate optimism); *InfoSAGE, Inc. v. Mellon Ventures, L.P.*, 896 A.2d 616, 627 (Pa. Super. 2006). Given that tortious interference claims extend to prospective contractual relationships, I am not persuaded by the alternative grounds offered by the trial court for distinguishing *Richette*, including the fact that the client in *Richette* was unrepresented at the time of the settlement and that the attorney-plaintiff in that case had not recovered any money when the jury issued its award. In sum, the trial court

failed to identify valid grounds for differentiating **Richette** from the instant case.

I find it interesting that the Majority affirms the trial court's refusal to follow **Richette** because Appellant never consummated an attorney-client relationship with Pasternak. Yet, the Majority recognizes that Appellant sought recovery of lost fees by raising a tortious interference claim against Sigman before the arbitrator. Majority Memorandum at 4. The Majority also acknowledges that, "The arbitrator agreed with this claim and determined further that if Sigman had not referred the Pasternak case, [Appellant] would have obtained a fee of $86,400.00 (the fee recovered by Datz)." **Id.** The obvious premise of the arbitrator's ruling was that, but for Sigman's tortious interference, Pasternak would have retained Appellant in her personal injury action. I would not allow Sigman's tortious conduct to serve as grounds for barring Appellant's recovery, as the trial court did.

The Majority next affirms the trial court's determination that Appellant was made whole by the arbitration award entered against Sigman. In this case, Appellant filed a complaint against Datz alleging that he, along with Sigman, collectively orchestrated a tortious plan to interfere with Appellant's prospective attorney-client relationship with Pasternak. In developing the damage component of its claim, Appellant asserted that Datz obtained an inadequate settlement (*i.e.*, $216,000.00) on behalf of Pasternak. Appellant therefore alleged that it was entitled to recover a fee based upon its

assessment that Pasternak's underlying claims were more properly valued in excess of $1,000,000.00. Before these claims were resolved, however, the litigation between Sigman and Appellant proceeded to arbitration. During the arbitration proceedings, Appellant asserted a nearly identical tortious interference claim against Sigman, but predicated its damages upon the actual fees recovered by Datz. The arbitrator concluded that this claim was meritorious and awarded Appellant an amount equal to that sum. Appellant now claims that, notwithstanding the finality of the arbitration award, it is entitled to recover damages from Datz based upon its enhanced valuation of Pasternak's claims. Appellant reasons that such a sum represents Appellant's lost profits stemming from the inadequate recovery obtained by Datz. The trial court disagreed, finding that Appellant's claims against Datz could not withstand summary judgment since Appellant already obtained the recovery to which it is entitled. Based upon *Richette*, and our prior decision in *Schein*, *supra*, I cannot agree with the trial court's conclusion, as Appellant is entitled to seek its reasonably expected revenue from the Pasternak case.

Lastly, the Majority accepts the trial court's determination that Appellant's claims were speculative. In its opinion, the trial court expressed skepticism as to whether Appellant would be able to demonstrate that Pasternak would have retained Appellant as counsel, whether Appellant would have successfully negotiated a settlement with opposing counsel, and

whether Appellant could establish a monetary value that would have resolved the case. Trial Court Opinion, 10/16/14, at 6-7. In line with these observations, the trial court concluded, "Determining the outcome of [Appellant's] hypothetical representation in comparison with the actual result would be based on absolute conjecture, and as such, [Appellant] is unable to properly establish any element of damages." *Id.* at 7. The trial court also noted that its concerns about excessive speculation would likely lead it to exclude the case valuation offered by Appellant's expert. *Id.* at 7 n.7.

Given our well-settled standard of review over summary judgment rulings, I am unable to endorse the trial court's examination of the record. "The question of whether damages are speculative has nothing to do with the difficulty in calculating the amount, but deals with the more basic question of whether there are identifiable damages." *Newman Development Group of Pottstown, LLC v. Genuardi's Family Market, Inc.*, 98 A.3d 645, 661 (Pa. Super. 2014). Here, Appellant came forward with case valuations similar to those that were presented in *Richette*, as well as testimony that it would have accepted the Pasternak case. Such evidence is not impermissibly speculative.[3] *See Schein*, *supra*. Moreover, on summary judgment, it is not the task of the trial court (or this Court) to assess the probative force of the non-moving party's evidence; instead, the

---

[3] The arbitrator's award itself lends credence to the conclusion that Appellant sustained tangible losses.

function of the court is to view the evidence in the light most favorable to the nonmovant and determine whether it has come forward with some evidence to establish the elements of its claims.  As Appellant met this basic requirement, its claims should withstand summary judgment.

For each of these reasons, I would vacate the trial court's order and remand for further proceedings.  Accordingly, I must respectfully dissent.